## MARTIN v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No. 11897.  Decided Feb 23, 1932

JUSTICE, CROW and KLINGER, JJ,
(3rd Dist) sitting.

W. E. Minshall, Cleveland, for plaintiff in error.

Ray T. Miller, Cleveland, and P. L. A. Lieghley, Cleveland, for defendant in error.

**BY THE COURT**

The first assignment of error in the order of occurrence, relates to the impanelling of the jury. We have given this ground the attention its importance requires, and find nothing affirmatively prejudicial to plaintiff in error in that matter.

The next claimed error in the course of the trial is that of the admission, over the objection of defendant's counsel, of the documents and other evidence showing the indictments against Potter, the result of the trial where trials had been had, and the fact of the giving of testimony before the Grand Jury on February 3, by the Schooleys who had been brought from the penitentiary where they were prisoners.

There was no statement by counsel for the state that other proof would be offered making any of that evidence relevant.

It is readily apparent that the state was founding conviction on the theory that Potter was murdered as a result of his connection with what was referred to as the land fraud matters, some of which were the subject of one of the indictments, but it is especially noteworthy that notwithstanding the very large number of comments by counsel for the state in the trial, statements and arguments in the court below and in the presentation of the case in this court, concerning land frauds and the various trials and indictments of Potter, and concerning the Schooleys and their acts, including their appearance before the Grand Jury, there is an amazing dearth of evidence in the bill of exceptions beyond the indictments themselves, the facts of the trials of Potter, and the results of the trials.

The majority of the court, Presiding judge Justice not concurring, hold the admission of that evidence to have been prejudicially erroneous, under §13449-5 GC, Judge Justice is of the opinion that even if this evidence does not tend to establish a motive for the killing, that being unquestionably the theory on which it was offered and received, still no harmful results to the accused are apparent by reason of its reception by the trial court, and hence not a sufficient ground for setting aside the verdict and granting a new trial.

Another assignment of error which has to do with the exclusion of testimony, is sustained by all the members of the court as being prejudicial. During the cross examination of Laub, custodian of the apartment, who testified in chief, to having rented suite four to Martin who pretended to be M. J. Markus, beginning at page 756 of the bill of exceptions, the court sustained the objection of counsel for the state to questions put by counsel for the defendant touching statements made by Laub materially different from the testimony given by the latter concerning the height and weight of Martin, pretending to be Markus, to the police department and the Plain Dealer, on February 8, after the discovery of Potter's body.

A majority of the court are of opinion that there are numerous other instances of prejudicial error in the restriction of cross examination by counsel for the defendant, which need not be particularized. Presiding Judge Justice is of opinion that those instances, while erroneous, were not prejudicial.

We are unanimous in holding that the trial court manifestly misconceived, and in the rulings misstated the law applicable to cross-examination, which is, that defendant could inquire of a witness for the state, as to all matters which the state would be entitled to prove to make out its case, as well as to matters which had been testified to by such witness.

The court did not charge that a verdict of manslaughter might be returned if the proof so warranted. In view of the fact that three unfired 32 calibre cartridges were found near the davenport, and two bullets of like calibre were also found in the room, and of the various other facts and absence of facts which need not be again here set forth, the case resting almost if not entirely on circumstantial evidence, the court are of unanimous opinion, and so hold, that it was prejudicial error to not so charge.

Misconduct of the prosecuting attorney and of his assistant in their arguments to the jury is urged as reversible error. No objections were interposed to the remarks of the assistant prosecutor. In several instances, objections were made to the remarks of the prosecutor. In the absence of objections, the statements of the prosecutor and his assistant in argument, will not constitute reversible error unless they are so flagrantly unjust and improper as to have deprived the accused of a fair trial. This a majority of the court do not find. The remarks of the prosecuting attorney to which objections were made, which in passing it seems fitting to say were largely invited and provoked by the remarks of counsel for defendant, do not, in the opinion of the majority of the court, require a reversal

of the judgment of conviction. True, these remarks as well as many statements not objected to, were harsh but in the light of the record it is difficult to see how they could have been otherwise. The prosecutor and his assistant were simply drawing inferences from established facts; inferences which at times were far fetched but nevertheless legitimate and proper deductions.

Judge Crow dissents from this holding for the following reasons: he is persuaded that the language of the prosecuting attorney and his eminent assistant, in many particulars far transcended the lawfully appropriate limits of argument, in alluding to matters highly derogatory to defendant and to defendant's defense, which were wholly unfounded by any evidence, and that the prosecuting attorney especially, persistently indulged in unwarranted, unjust and inflamatory personal vituperation and abuse of defendant, all of which must have tended materially to deprive defendant of a fair trial.

As the prosecuting attorney's argument proceeded, objection was made a number of times to portions which, if improper, were not prejudicial, but it is apparent that it was the purpose of defendant's counsel to protest generally against the flagrant misconduct of the prosecuting attorney; and even had there been no objection, that misconduct was such as constituted ground for a new trial.

Without pointing out the various wrongful portions, uttered by the prosecuting attorney and his assistant, it is enough to say that upon the whole, the argument of both was at times so manifestly unjustified that it could have had no other purpose and effect than to obscure the real issues and to so lower the defendant in the minds of the jury, as to leave the impression that he was not even a human being.

Some twenty-three hours after the jury had retired for deliberation, the court, without request by the jury or counsel, summoned the jury before him and the following colloquy occurred:

"The Court: Ladies and Gentlemen of the jury. Is it a Foreman or a Forelady?
A Juror: Foreman.
The Court: Have you been able to agree upon a verdict?
The Foreman: No, we have not.
The Court: Is it a question of law, or a question of fact that is troubling you?
The Foreman: Both.
The Court: If it is a question of law, the court is unable to help you, because this charge and instruction was placed in writing, and every law that is applicable to any issue that arises in this case you have with you, in these special written instructions. The court cannot give you anything further as to the law of the case. And if it is a question of fact, that is something that you are alone concerned with. You have now had this case under consideration about twenty four hours. At least ten of those hours have been occupied in deliberation; is that not correct?
The Foreman: Yes, approximately.
The Court: Ladies and Gentlemen of the Jury, it is your duty to give careful consideration to the views of your fellow jurors. Listen to reason and arguments. Do not be obstinate. Your sole object is to arrive at a common conclusion, and to that end, you should deliberate together, calmly, and be considerate of each other's views. Experience teaches us that as a general rule, the majority view of a subject under discussion is safer than a minority opinion. You may well know that if this jury is unable to reach an agreement, that twelve other men and women of no higher intelligence than you folks, will eventually have to decide it. You may resume your deliberations."

Defendant objected and excepted to the recalling of the jury and to charging the jury and to the additional instructions themselves.

Counsel for plaintiff in error takes the position that what the court said was in effect an additional charge, violative of §13442-9, paragraph 7, GC, and as such constituted reversible error. Counsel for defendant in error argue that it was not an additional charge but the language of the court was by way of admonition only.

We deem it unnecessary to bestow discussion on the question whether it was an additional charge or whether it was not, because whatever it was, so far as it pertains to the statement that "experience teaches us that as a general rule the majority view of a subject under discussion is safer than a minority opinion" was unwarranted and erroneous.

True, the record does not show whether, when those words were used, the jury had voted so that there was a majority for either acquittal or for conviction. In that state of uncertainty the rule to be followed in determining whether the words quoted were prejudicially erroneous, is found in §13449-5 GC.

It may well have been that a vote had been taken and that only a majority had determined that a verdict of guilty should

be found, in which event, the jurors, both the minority and the majority, would have understood that the court had said that it was safer to follow the majority, than it would have been for the minority to have continued in the opinion they then had.

Having disposed of such of the claimed errors as were procedural, we come to two remaining points, which have to do with the submissibility of the case at all, and with the sufficiency of the evidence in support of the verdict, if the case should have gone to the jury.

A majority of the court, Judge Klinger dissenting, hold that there was evidence tending to prove at least an unlawfull killing of Potter, and that Martin either killed Potter or aided and abetted the killing.

A majority of the court, Presiding Judge Justice dissenting, hold that there was no evidence whatsoever, of premeditation and deliberation on the part of Martin in relation to the homicide.

If there was no evidence tending to prove premeditation and deliberation, and if the case was submissible to the jury, a majority of the court are of opinion, Judge Klinger dissenting, that unless the homicide was shown to have been manslaughter, it would, as a matter of law, have been second degree murder. Wright, 21.

Since Presiding Judge Justice is of opinion that the verdict of first degree murder is sustained by sufficient evidence, and since Judge Klinger is of opinion that a case was not made at all against Martin, the opinion of Judge Crow on whether a verdict of second degree murder would be sustained by the evidence, is of no consequence.

Lastly of the important errors presented, is the assignment of error in overruling the motion of a new trial on the ground of newly discovered evidence, filed quite a time after judgment had been entered on the verdict.

Ten affidavits in support of the motion were presented, some of which set forth facts manifestly so unimportant as to be wholly valueless at the trial. But most of the contents of the affidavits did relate to facts in issue which would have been clearly relevant to some of the chief matters connected with the alleged guilt of Martin, and material to his defense. It is therefore somewhat unfortunate that the jury did not have the benefit of such testimony.

However, our analysis of the several affidavits, in their relation to all the evidence appearing in the bill of exceptions, leads us to the unanimous conclusion that it cannot be held that it is reasonably probable that, if such of the testimony contained in the affidavits, as was admissible, had been introduced, the verdict would have been different from the one returned. Consequently, this assignment of error is not sustained.

For the several errors hereinabove enumerated, as prejudicial, the judgment is reversed at costs of defendant in error, and cause remanded for a new trial, and further proceedings according to law.