## STATE v HARRIS

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1616.  Decided May 20, 1940.

I. L. Jacobson, Dayton; W. O. Stokes, Dayton, for defendant-appellant.

Nicholas Nolan, Prosecuting Attorney, Dayton; Sam D. Kelly and C. W. Magsig, Asst. Pros. Attorneys, Dayton, for plaintiff-appellee.

## OPINION

**BY THE COURT:**

This cause had its inception in the Court of Common Pleas, wherein Eugene Harris, alias Floyd McAlphine, was tried and convicted without recommendation of mercy upon an indictment charging that on the 13th day of December, 1939, the said Eugene Harris "purposely and willfully killed L. J. Rice, a police officer of the City of Dayton, Ohio, while said L. J. Rice, was in the discharge of his duties as police officer."

A motion for new trial was made setting out eight grounds. This motion was submitted and overruled and the defendant sentenced to be executed. The defendant gave notice of appeal to this court from the judgment of the court below.

The first assignment of error is to the effect that the court submitted three verdicts to the jury, one of "guilty as charged in the indictment", the second, "guilty as charged in the indictment with a recommendation of mercy" and the third, "not guilty". The defendant complains that in view of the defendant's testimony of an accidental dischare of his pistol, the court should have submitted the question of manslaughter.

The second assignment is that the court erred in refusing to permit defendant to show that a prior killing by him on the same day of one Scotty Conner, was in self-defense.

The third assignment is misconduct of the prosecuting attorney in that in his final argument the prosecutor indulged in impropriety to the prejudice of the defendant.

These several assignments of error will be considered in order.

The indictment was based on §12402-1 GC, charging murder in the first degree for the killing of a police officer while in the discharge of his duties.

### STATEMENT OF FACTS

A short statement of the incidents leading to the killing of the police officer will be of value.

The defendant was an escaped convict from the penitentiary of Alabama where he had been sentenced to life imprisonment for a murder committed when he was 16 years of age. He had served five years of this sentence. From Alabama he came to Dayton, Ohio, where he had resided about 18 months before the returning of the indictment. While in Dayton he kept company with Fannie Hopkins and had as a rival for her affections one Scotty Conner. On the 29th of September the date named in the indictment, while calling on his lady friend and while on her premises an altercation occurred between him and Conner during which defendant shot and killed Conner. He then went to 513 College Street, to an upstairs apartment, where the shooting of the officer occurred.

Sergeant Rice, a colored officer, together with two white officers, entered the upstairs apartment to search for the defendant whom they suspected of the killing of Conner. Defendant had concealed himself in an unlighted bathroom. Shortly after his arrival, Rice, the officer, entered the bathroom while his fellow officers were in other rooms. The defendant sought to escape from the bathroom into an adjoining bedroom and the shooting commenced during which at least seven shots were fired. Sergeant Rice was struck by one of the bullets and died several days later.

### EVIDENCE ADDUCED AT TRIAL.

The evidence sufficiently covering the question in issue was testimony given by the defendant that he fired only one shot and that this one shot was fired when his gun was accidentally discharged when the officer struck his hand in a scuffle in the dark. The state claimed he fired two shots, admitting that the officers fired all the rest. The defendant had a 32-20 revolver and all the guns of the officers were of 38 caliber.

Before the court commenced his general charge to the jury, counsel for defendant requested a charge upon the subject of manslaughter and that the court submit a manslaughter verdict.

This the court refused to do either as a special charge or a charge included in the general charge. After the general charge, counsel renewed his request for a charge on the subject of manslaughter and reserved a special exception to the court's refusal.

The testimony of the defendant which counsel maintains requires a manslaughter charge was his admission upon the witness stand, when he states in substance, that he went into the dark bathroom and when he heard someone knock on the kitchen door he stood near the bathroom door. While he was in the bathroom with the door slightly ajar, someone rushed in calling, "Come out or I will kill you". Thereupon the defendant grabbed the officer and pulled him out of his way with his left hand. The officer was standing in the door, the defendant having "snatched" him on his (the defendant's) side, pulling him into the bathroom. The defendant took his revolver from his pocket after he had pulled the officer into the bathroom. After pulling the officer with his left hand, he ran toward the door and fell on his knees and someone from outside the bathroom fired a shot. He then endeavored to run out of the bathroom door and while arising from his stooping posture, the officer hit his right hand that held the gun and knocked it up. He then ran through the middle room out of the door of the front room and was shot twice by the officers. He sought to escape but was later captured. He says that he fired only one shot. There was one officer only in the bathroom. He had owned the gun he used about eight months. He admitted on cross-examination that he heard a woman say they were officers when they came into the house just about a minute before the shooting, and that at the time of the shooting he knew they were officers. He further admits that at the time he "snatched" the officer he had his gun in his hand getting it out of his pocket when he got hold of the officer and after knowing that he was an officer. He maintains the shooting was accidental, occurring not in the bathroom but in the adjacent bedroom. The witness made a physical demonstration as to how the officer had struck him and how the gun was fired. The matter is sufficient to exhibit the claim of the defendant as to how the shooting occurred. There is a controversy as to whether the defendant fired one or two shots and also some effort to show that the bullet that pierced the officer was not a 32-20 bullet. A statement made by defendant immediately after his arrest was introduced by the state substantially as his oral testimony.

## THE CHARGE.

Before the court delivered the general charge, counsel for defendant stated as follows:

"I want the record to show before the court starts charging the jury that defendant's counsel requested the court to charge on the subject of manslaughter and assault and battery and also to give to the jury verdicts of manslaughter and assault and battery."

The court made no ruling upon this request, but after some incidental matters delivered his general charge, the pertinent part of which, so far as relates to the first assignment of error may be summarized:

In order to find the defendant guilty of the charge contained in the indictment you must find beyond a reasonable doubt that the defendant purposely and willfully with intention of killing, fired the bullet which struck L. J. Rice, together with all the other elements of the crime of First Degree Murder heretofore enumerated;

If you find beyond a reasonable doubt that the defendant is guilty of murder in the first degree, then you should return against said defendant a verdict of guilty of murder in the first degree;

If the state fails to prove beyond a reasonable doubt any of the elements of the crime charged, as hereinbefore enumerated, the defendant is entitled to be acquitted. The Court then charges as to recommendation of mercy in the usual form. The court submitted to the jury three forms of

verdict (1) Guilty of murder in the first degree (2) Guilty of murder in the first degree with recommendation of mercy (3) Not guilty. The court made no reference to any inferior degree nor to manslaughter as specially requested by counsel for defendant or assault and battery. Thereupon, counsel for defendant reserved general exceptions to the charge of the court "and especially to the refusal of the court to charge upon the subject of manslaughter, and assault and battery and the refusal to submit those two forms of verdict to the jury".

In support of the first assignment of error, defendant relies upon Freeman v State, 119 Oh St 250 and State v Todor, 113 Oh St 377.

There is similiarity between the facts as contended for by appellant in the case at bar and that of Freeman v State. That case arose in Montgomery County, as does the present case, and related to an indictment for purposely and willfully killing an officer, as does the case at bar. The court there held that where a defendant is indicted and tried for purposely and willfully killing an officer under §12,-402-1 GC, and he offers testimony tending to prove that the killing was not done purposely or willfully but in a scuffle and unintentionally, it is the duty of the court to charge a lesser degree than murder in the first degree; if such testimony tends to prove that such killing, although unintentional, was caused by the defendant while resisting arrest, the court should charge manslaughter. Jones, J., delivering the opinion of the court states, in substance, at page 253, et seq., if the killing was "unintentional" and not "purposely or willfully" done, it would not have been murder in the first degree; but if the killing was done under such circumstances and the jury believed it was so done and was not in lawful self-defense, the offense might be reduced to manslaughter for the killing of an officer while resisting arrest.

"When different degrees are included in the offense charged, the jury may find the defendant guilty of an inferior degree included in the offense (§13692 GC); and if the evidence tends to support such inferior degree, the court should charge concerning it. True it is that the jury may have disbelieved the defendant, since the manner of killing was circumstantial. * * * However, the court should have charged the defendant's theory of the case. The rule has often been established by this court that where the evidence justifies it, the lesser degrees of an included offense must be charged; if there is no evidence tending to prove the lesser degree, the court need not charge in that respect."

The court cites in support of the latter principle Bandy v State, 102 Oh St 284 and Windle v State, 102 Oh St 439. The court cites with approval New York cases to the effect that the refusal in first degree murder indictment to instruct as to lower degrees of homicide, and giving instructions for murder in the first degree or to acquit, is proper only where no possible view of the facts would justify any other verdict except a conviction of the crime charged or an acquittal.

Todor v State, 113 Oh St 377, discloses that Todor was indicted in a single count for purposely killing a woman. In the trial the defendant testified, "I pulled a gun and shot, but I didn't intend to shoot her. * * * I went there, but I didn't intend to kill her * * * I went down there, but I didn't intend to shoot her." The court charged upon the subject of murder in the first degree with recommendation of mercy and the second degree but did not charge upon manslaughter and the forms of verdict did not include manslaughter. The court states, in substance, that the evidence may not have been sufficient in the composite mind of the jury to raise a reasonable doubt as to the premeditation and deliberation of the plaintiff, but it was sufficient to make homicide without premeditation and deliberation an issue in the case. Manslaughter having thereby become an issue, the duty of the court to charge the jury with reference thereto was not different from

his duty to charge the jury in reference to the issues of murder in the first degree and murder in the second degree. However, the plaintiff in error having made no request to the court to charge upon the subject of manslaughter and the exception being general, the court holds that the charge of the trial court was correct upon the subjects covered and that the exception to the error of the court in not charging upon the subject of manslaughter was not saved by a general exception and the judgment was affirmed for that reason.

State v Schaeffer, 96 Oh St 215, relates to the requirement of a charge of a lesser degree and holds:

"6. Where all the evidence clearly and conclusively shows that the unlawful act relied upon by the state directly caused the killing, and there is no evidence to the contrary, the failure of the court to charge on assault and battery is not error."

"7. The unlawful act relied upon as the predicate for manslaughter must be the proximate cause of death. If death resulted from any other cause, or there be a reasonable doubt as to the unlawful act being the proximate cause of death, the jury should acquit. But where, upon the undisputed facts, it clearly and conclusively appears to a moral certainty that the unlawful act complained of was the proximate cause of death, a failure to so charge, especially where there was no request to so charge, is not reversible error."

Wanamaker, J. delivering the opinion of the court examines all Ohio cases and many others extant at that time upon the question of the necessity to charge a lesser degree where the evidence clearly shows the defendant either guilty of the major offense or not guilty and comes to a very definite conclusion that there is no error in the refusal t charge the lesser offenses where there is no evidence to support it. This is logical and can be readily appreciated. It always has seemed to be a useless act upon the part of the court to charge the entire gamut of lesser offenses included in the major offenses; murder in the first degree; murder with mercy; murder in the second degree; manslaughter, assault and battery and assault, where there is no evidence under which the defendant could possibly be found guilty of any of the lesser offenses, he being either guilty of the major offense or not guilty at all.

Since Judge Wanamaker's illuminating opinion, we have had the two cases already alluded to, Bandy v State, 102 Oh. St 384 and in the same volume, Windle v State, 439.

In the first of these cases, it is held that murder in the first degree literally considered necessarily includes murder in the second degree and manslaughter.

"1. Whether in an indictment for murder in the first degree in the perpetration of a robbery, a charge is warranted as to murder in the second degree, or manslaughter, depends, however, not merely upon whether or not these are literally included in the formal charge, but upon whether or not there is any evidence tending to support a charge of murder in the second degree, or manslaughter."

"2. If the indictment charges murder in the first degree in the perpetration of a robbery, and there is no evidence tending to support a charge of murder in the second degree, or manslaughter, as distinguished from murder in the first degree, then the defendant, upon the failure of proof as to murder in the first degree, is entitled to an acquittal, and, in such case, it is not error for the court to refuse to charge either murder in the second degree or manslaughter."

The Windle case holds that an indictment charging in separate counts shooting with intent to kill and shooting with intent to wound includes the lesser offense of assault and battery and assult and where. upon the trial, the evidence tends to support such lesser offense or offenses, it is the duty

of the court to charge the jury with reference to such lesser offense or offenses. **State v McCoy, 88 Oh St 447** modified.

The court on page 323 of the record, in overruling the motion for new trial, states:

"I would like to make this comment with reference to one branch of motion for new trial and that is with reference to the charge of manslaugter. The court was of the opinion at the time of the trial, and still is, that there was no evidence in the record that would show a state of facts upon which a charge of manslaughter might be based. The case is different from the Freeman case, which was tried here a number of years ago because in that case there was some testimony of the defendant himself which would show a condition upon which manslaughter might be based."

The court then quotes further from the charge in the Freeman case to indicate other errors in reference thereto.

Inquiry may be made as to what evidence would give rise to the occasion of charging manslaughter. **Sec. 12404 GC** defines manslaughter to be the unlawful killing of another except as defined in the preceding sections defining higher degree of homicide.

**Sec. 12858 GC** provides the penalty for resisting an officer. If the defendant during the process of resisting arrest killed the policeman, even though he had no intention or design to do so, but the killing was the result of an accident, he would thereby be guilty of manslaughter as was pointed out by Jones, J. in the Freeman case.

### THE NEW STATUTE

It will be noted that the Freeman case was decided on June 20, 1928. Thereafter §13449-5 GC was enacted, 113 V. 123-196. The act beginning at page 123 and extending to and including page 215 of 113 Ohio Laws was "to Revise and Codify the Code of Criminal Procedure of Ohio" and to repeal certain sections. Among the repealed sec-

tions were **13745 to 13750** having reference to new trials. The present sections under the general topic "New Trials" are §13449-1 to and including §13449-5.

It is therefore not apparent that the present statute, §13449-5 GC was especially enacted to correct the abuses that arose under the technicalities such as appeared in the Freeman case. The act was a complete revision and codification of the Code of Criminal Procedure of Ohio. However, before the codification, Chapter 28 covering new trials did not include §13449-5 providing "When New Trial shall Not be Granted". It therefore appears that the codifiers took advantage of the complete codification of the criminal code to insert the new sections under Chapter 28 referring to new trials which had not theretofore appeared in the criminal code. Whether or not the attention of the legislature was directly attracted to the Freeman case is of no particular consequence for it does appear that whatever prompted the insertion of the new section, it was **not** in the criminal code on June 20, 1928, when Freeman v State was decided.

We are concerned with §13449-5 GC which is the first appearance in the criminal code of a statutory denial of the right to grant a new trial. The provisions pertinent to this examination are:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court * * *; nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

The present matter being a claimed error for misdirection of the jury, the pertinent provision is that the new trial shall not be granted "unless the accused was or may have been prejudiced thereby". The statute then provides, "nor for any other cause whatsoever unless it shall affirmatively ap-

pear from the record that the accused was prejudiced".

State v Hoffman, 131 Oh St 27, second syllabus:

"Criminal cases must be reviewed in Ohio in the light of §13449-5 GC * * *."

State v Anna Marie Hahn, 10 OO 29, 7th syllabus.

The case of William Murray v State of Ohio, 23 O. C. C. (N.S.) 508, 5th syllabus is to the effect that in a trial of one indicted for first degree murder, it is not prejudicial error on the part of the court to fail to charge the jury that they might find the defendant guilty of assault and battery, where, under the charge as given, the jury might have found the defendant guilty of a crime of lesser degree than that of which they did in fact find him guilty. On page 513 the judge, delivering the opinion of the court states:

"It is claimed that the court erred in omitting to instruct the jury that they might return a verdict of assault and battery if they saw fit. If it should be admitted that such an instruction would have been proper, it does not appear that the accused was prejudiced by the omission. Under the instructions given, a verdict of manslaughter might have been returned, but a verdict of guilty of murder in the second degree was in fact returned. It is clear that the jury would not have found the defendant guilty of assault and battery when they did not exercise the right given them to find him guilty of as low a degree of crime as they might have done under the charge."

It is urged that this holding of the court supports the claim advanced that the jury not having found him guilty of murder with recommendation of mercy, would not have found him guilty of manslaughter, and that, therefore, the omission of the manslaughter charge was not prejudicial. This case was decided prior to the amendment of the statute to which we have alluded.

It may be succinctly stated that if upon the most favorable view of the evidence in behalf of the defendant there was proof direct or inferential that he killed Sergeant Rice but that it was not willful or purposeful but was unintentional or accidental, then the court was required to charge manslaughter. The converse of this proposition is true and the court is not required to charge manslaughter merely because it is an included offense of murder in the first degree as charged in the indictment.

For the purpose of clarifying the issues certain salient facts may be stated. It is the theory of the state that the defendant fired two bullets, both while he was in the bathroom with Sergeant Rice; that one of these bullets, which we may designate as the first bullet fired, killed Sergeant Rice while he and defendant were in the rear of the bathroom; that the second bullet fired in point of time struck Sergeant Smith while he and defendant were near the door from the bathroom to the bedroom. The defendant states that he fired but one bullet when he had left the bathroom and moved into the bedroom. It conclusively and undeniably appears that Sergeant Rice was struck by but one bullet which killed him.

The state claims and offers testimony tending to prove that the bullet (No. 1) which killed Sergeant Rice was found upon the floor of the bathroom and the other bullet (No. 2) which struck Detective Smith, went through the wall of the bathroom into the kitchen wall and then into the ceiling where it fell to the kitchen floor and was found. The state claims that both of these bullets were clearly and conclusively shown to have been fired in the bathroom from a 32-20 caliber revolver which admittedly defendant used in the shooting.

If bullet No. 1 killed Sergeant Rice then clearly the issue drawn between the state and the defendant required but three verdicts, first degree murder, first degree murder with recommendation of mercy and acquittal.

Upon this issue the jury was required to find whether or not the state's testimony was true. If so, then the defendant killed sergeant Rice by shooting him and there is no explanation of the manner in which it was done and as he is presumed to intend the natural and probable consequences of his own act he would be quilty of murder in the first degree. If, as he says, he fired no shot in the bathroom and the jury believed this, then as to bullet No. 1 he could not have been held for the killing of Sergeant Rice.

On the other hand the only bullet as to which the defendant could insist that he was entitled to a manslaughter charge is the one which he admitted he shot. It is a prerequisite to the charge of manslaughter that in some view of the evidence the second bullet caused the death of Sergeant Rice. If it did not, then clearly neither manslaughter nor murder could have resulted from it. There clearly was an issue as to the first bullet but as to the second a very careful examination of the record must be made to determine the question.

The court should not permit a jury to speculate, to base any verdict upon pure conjecture nor to consider a verdict as to which there is no testimony tending to establish it.

It must be conceded that notwithstanding the weight of the testimony as it appears to this court, or, as it may have appeared to the trial judge, there were certain controverted facts among which are these, whether one or two shots were fired, if two shots were fired, were they both fired in the bathroom, if one bullet was fired, was it fired in the bathroom or bedroom, whether the 32-20 caliber bullets claimed to have been found by the state were actually so found, and if so, were they immediately after the shooting in the places where found.

On the other hand there are certain physical facts which are undisputed and as to which there can be no reasonable doubt. Some of them are that Sergeant Rice was shot but once; that the bullet which killed him struck him in the abdomen and took a downward course.

Further, for the purposes of the question under consideration, we must accept as true any permissible inferences to be drawn from the statements of the defendant as to his acts at the time of the shooting.

We then examine the record with particularity to determine if the defendant was entitled, upon his own theory, to have the question of his guilt of the offense of manslaughter presented to the jury in a proper charge.

Dr. R. D. Snyder, coroner of Montgomery County, performed the autopsy on the body of Sergeant Rice and testified that the cause of death was a penetrating wound of the abdomen destroying about one-third of the liver substance and hyperstatic pneumonia as an aftermath of the wound. The wound was just beneath the breast bone between the chest and abdomen, approximately in the mid-line. The bullet entered the liver between the right and left lobes. It went through one rib and fractured the seventh and eighth ribs. On page 175 of the record these questions were put and answers made:

"Q. Now what course did the bullet take so far as being level, up or down, or as near as you can tell?

A. Well, the course of the bullet from the abdomen where it entered the epigastriom beneath the breast bone was to the right and posterior. To the right and back. It ran approximately in a straight line yet more of a downward trend than in a straight line. In other words, it was slightly down.

Q. Traveling down?

A. Yes, sir."

Now let us examine this positive testimony as to the course of the bullet and the cause of death, with the statements of the defendant. He says that he stepped inside the bathroom, which was so dark that persons could not be identified; that he left it open about 14½ inches; that he was along side the door and Sergeant Rice came to the

door and said, "Come out or I will kill you." The defendant then grabbed Sergeant Rice, pulled him out of defendant's way with his left hand and ran toward the bathroom door. Defendant fell to his knees and at that moment a light hit him in the face and someone from the outside of the bathroom fired a shot. Defendant then ran out of the door and somebody, who, upon his testimony may have been Sergeant Rice, hit his right hand and knocked it up. That is when the gun went off. At that time defendant was in the bedroom just outside of the bathroom. He says that he shot but once; that he thinks that the bullet which he shot was the one that entered the south wall of the bathroom and went up into the kitchen ceiling. On cross-examination at page 214, these questions and answers appear:

"Q. Oh, that is in the bathroom. I am talking about when you had your hand hit in the bedroom and fired this shot?

A. When I got up on my knees about like this, I started up like that and this fellow hit my hand and knocked it right up.

Q. Knocked it right up?

A. Yes, that is the way it went.

Q. You shot through the ceiling?

A. Yes, the gun went off.

Q. Was your hand pointed toward the ceiling when you shot?

A. Sure it was.

Q. It was?

A. Yes, sir.

Q. And that was in the bedroom?

A. Yes, sir. Right in front of the bathroom door."

Upon the undisputed testimony the wound from which Sergeant Rice died was from a bullet which entered his abdomen and went through his liver in a downward course. Thus, it clearly appears that the one bullet which the defendant admits he shot could not have produced the wound which killed Sergeant Rice. It is evident that the bullet which he shot was in a distinctly upward course as he says his hand was pointed toward the ceiling when he shot. (Emphasis ours). The only bullet mark which could answer the description of the shot which defendant admits he fired is that which went out through the south wall of the bathroom into the kitchen at a height of 76 inches above the bathroom floor and on through the north wall of the kitchen where it had obtained a height of 79 inches and came to rest in the kitchen ceiling. This is the place where the defendant says the bullet which he shot found its mark.

Of course, there is an abundance of evidence which is thoroughly convincing that the shot or shots which the defendant discharged came from the bathroom and not the bedroom and that bullet No. 2 struck Detective Smith along side the head and went through the top of his hat. However, we concede that these were factual questions, but there can be no reasonable doubt that the one shot which defendant admits he fired could not have been the shot which caused Sergeant Rice's death. If it were possible because he was in a crouching position or on his knees that he could have shot Sergeant Rice in the region of the abdomen, the direction of the bullet would not have been on the level nor downward, as the course of the fatal bullet clearly was.

To restate them, then, there are two uncontroverted facts which cannot be reconciled with the theory that the shot which defendant admits he actually fired killed Sergeant Rice. (1) That the bullet which killed Sergeant Rice entered his body at the abdomen and took a downward course. (2) That when defendant fired, his hand was pointed toward the ceiling and therefore the bullet must have taken a directly upward course.

In this situation no issue was raised upon which the jury could have found that the defendant was answerable to the offense of manslaughter for the reason that upon his own testimony the one bullet which he admittedly shot could not have killed Sergeant Rice and, therefore, upon his own theory of the case there was but one appropriate verdict, namely, not guilty

230

SECOND ASSIGNMENT OF ERROR.

It is asserted that the defendant sought to show that the shooting of Scotty Conner was in self-defense. The court refused to admit this evidence, other than that Conner was shot. The defendant made a proffer of the rejected testimony and requested the Court to charge, before argument, that the fact of this shooting is not to be held against the defendant in this case. This the Court refused, but in his general charge stated that the fact that Conner may have been killed by the defendant is not to be considered in determining whether he is guilty of the crime of first degree murder in killing Rice. Such killing would have no bearing upon the question of guilt of the crime for which he is now charged. You must not permit your minds to be prejudiced by this circumstance but may consider it in connection with the question whether or not Rice had reasonable grounds to believe that the defendant had committed "such felony". Counsel claims that the use of the words "such felony" connected with the refusal to permit any evidence showing that the shooting was in self-defense was a handicap to the defendant and left the jury to understand that the killing of Conner was felonious. We think that the Court's charge correctly stated the law as to the killing of Conner and that the mere use of the words "such felony" did not of itself indicate to the jury that that killing was felonious. The test of the right of the officers to arrest the defendant without a warrant was—did they have reasonable grounds to believe that defendant had committed a felony. This was properly charged. The police officers proceeded on the theory that it was felonious, otherwise they would not have pursued Harris in an attempt to arrest him without a warrant. We see no prejudicial error in the charge on this assignment of error.

The third assignment of error relates to misconduct of the prosecutor in his closing argument. The statement of counsel complained of is set out in the brief and largely relates to the fact that counsel for the state was urging that the fact that the defendant had been convicted in Alabama and not there sentenced to death was a reason why the jury should refrain from recommending mercy.

After counsel for the state had made certain statements to which counsel for defendant objected, the defendant stated, "We object" to which the Court responded, "Sustain the Objection". (Record P. 301). Certain other statements were made to which counsel said "We object" and the Court responded, "Sustain the objection". Thereupon counsel for defendant made a motion for a mistrial, which was overruled to which no exceptions were taken. After that certain other objectionable statements were made to which there was no objection or complaint. It will be observed that when counsel objected to the statements he simply stated "We object" and the court sustained his objection, which was as far as counsel had made a request except where counsel made a motion for a mistrial. A number of like objectionable statements were made after the last objection by counsel to which he interposed no further objection. We are of the view that the court might well have been requested by counsel to state to the jury that they were to disregard the statements of counsel. He did not do so and the court sustained him to the extent of his objection. The objectionable statements made after his last objection and not objected to by him were not called to the attention of the court and his former objections would not carry over to subsequent objectionable statements. As stated in 10 OO 38, quoting from Lurtin, J.,

"There is a degree of liberty allowable to counsel in respect to argument and the inference to be drawn from the evidence which a trial court should respect until the facts of the case are overstepped or arguments used which plainly abuse the privilege."

The argument was not so essentially prejudicial that the Court was re-

quired of his own motion to caution counsel or take the statements from the jury.

We see no error in this assignment.

There were other errors complained of in the court below, but not urged before this court. We have noted them and think they are of no prejudicial effect.

No prejudicial error appearing, the judgment will be affirmed.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.