THE STATE OF OHIO, APPELLEE, *v.* HILL, APPELLANT.

(No. C-76403—Decided July 27, 1977.)

*Mr. Simon L. Leis, Jr.*, prosecuting attorney, *Mr. Thomas P. Longano* and *Mr. Irvin A. Meserth*, for appellee, *Ms. Kathleen C. King*, for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; and the transcript of the proceedings, the briefs and the arguments of counsel.

The assignments of error, having been fully considered, are accordingly passed upon in conformity with App. R. 12(A) as follows:

Defendant Hill was convicted of possession of a narcotic in violation of R. C. 3719.09. He assigns three errors: the denial of due process and a fair trial because he could

not discover the identity and whereabouts of eye witnesses to his arrest; the failure to suppress physical evidence removed from his clothing during a frisk prior to arrest; and plain error consisting of highly prejudicial remarks by the state during closing arguments. We find that the physical evidence should have been suppressed and that the state's remarks in closing argument were plain error. We reverse and remand for a new trial.

In his second assignment of error, considered first for convenience, defendant claims that the glassine bag containing heroin which was removed from the rolled-up left leg of his jeans should have been suppressed because the arresting officer did not have probable cause to search or to arrest. Under *State* v. *Timson* (1974), 38 Ohio St. 2d 122, probable cause is present when the arresting officer has sufficient information to warrant a prudent man in believing that a felony has been or is being committed and that it has been or is being committed by the accused. Under the circumstances described below, we believe that the officer had reason to be suspicious of Hill but not probable cause to search or arrest him.

The arresting officer entered Eddie's Bar while his partner was writing a traffic ticket on the street. The general area was one in which drugs were sold and used, and the arresting officer had made four arrests in that same bar within the previous three weeks. The room (bar) was practically full, and the arresting officer concentrated his attention exclusively on Hill who was seated in a double booth in the rear of the room talking to two female impersonators. The officer did not know Hill, but had seen him in the company of other men who had since been arrested for possession of narcotics. The officer did not know Hill's name nor did he have any information about Hill's past history or record.

One of the female impersonators saw the arresting officer, said something not heard by the officer, and both female impersonators promptly moved away from Hill's booth towards the bar. The officer did not take his eyes from Hill. He saw Hill "duck down" that is, lean forward

and place his hands and arms under the table in the vicinity of his legs. From where he was standing at that time, the officer could not see anything in Hill's hands or underneath the table. As the officer approached the booth, Hill made a movement to leave the booth but was told to "remain steadfast." About this time, the arresting officer's partner came into the bar to the place where Hill was confronted. The arresting officer asked Hill for identification, received a card, asked for more identification, received another card, asked for still more identification than that and received Hill's wallet. The officer put the wallet on a table and proceeded to frisk Hill, starting "at the top around the collar" and proceeding down the trunk of his body to his two legs. Inside the rolled-up portion of the left leg of his jeans, the arresting officer found the glassine packet containing heroin.[1] Thereafter, he told Hill he was under arrest.

Under these circumstances, the officer had reason to be suspicious of Hill, but not probable cause to arrest. In *Sibron* v. *New York* (1968), 392 U. S. 40, envelopes of heroin were suppressed when, prior to the physical search of defendant's clothing and seizure of the heroin, the officer had observed him do no more than converse and eat with persons known to the officer to be narcotic addicts. Stating that the seized material was clearly inadmissible in evidence, the court said: "Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin. * * * Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." *Id.*, at 62 and 64. Questionable associations and furtive movements are not enough. *State* v. *Baldwin*, unreported, First Appellate District, No. C-75489, decided June 21, 1976; *State* v. *Kratzer* (1972), 33 Ohio App. 2d 167. In

---

[1] During the officer's pretrial testimony on the motion to suppress, he did not state that he feared for the safety of himself or others. During his testimony in the jury trial, the arresting officer said only that in some instances, he had found weapons strapped to the legs or ankles of drug users. *Terry* v. *Ohio* (1968), 392 U. S. 1 does not apply.

*State v. Clements,* unreported, First Appellate District No. C-75147, decided February 2, 1976, the arresting officer saw the accused receiving money from numerous persons in return for small objects taken from his pockets over a period of one hour. That search and arrest were held constitutionally reasonable. The search and seizure *sub judice* are unreasonable.

The second assignment of error is well taken.

The defendant claims, in his third assignment, that prejudicial error resulted when the prosecuting attorney appealed to the pecuniary interests of the jury in the closing argument.[2] We find this assignment to be well taken.

Prosecutorial misconduct can be so prejudicial to the rights of a defendant that a reversal is required. *Cleveland, Painesville & Eastern R. R. Co.* v. *Pritschau* (1904), 69 Ohio St. 438. Generally, however, statements made during a closing argument will not result in reversal unless defendant's right to a fair trial was adversely affected. *State* v. *Clark* (1974), 40 Ohio App. 2d 365. In making this determination, the court considers several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.

Considering *seriatim* these four factors, the prosecutor in effect told the jury that they could disbelieve the officer

---

[2]The statements objected to are found in the transcript, as follows:

"He wouldn't be on the force six months, one month, if he was a liar, ladies and gentlemen. He's a devoted police officer. And a devoted police officer is as interested in the benefit of the defendant as he is the benefit of society who he is protecting. He's not going to come into a courtroom with a case that is made up. He's not going to charge a man who can sue him if he did something wrong. This guy could sue him civilly if he came into the courtroom with manufactured evidence, with lies, and with things that are not within the duty of a police officer to do, namely, to come into court with the proper evidence.

"A police officer is obligated before he takes action to know the action he takes. He can be sued for false arrest, malicious prosecution, and everything else. Do you think that a police officer is going to take a chance? The whole city of Cincinnati would have to pay off if there was a judgment in that respect. So the police officer is going to be sure when he comes before you that he comes here before you with a case."

only at their monetary peril; if they found against the officer, the city of Cincinnati would have to pay. Clearly this was a direct appeal to the pecuniary interests of the jury as taxpayers. Such appeals have been held to constitute reversible error. *State* v. *Muskus* (1952), 158 Ohio St. 276. Further, the implication was that in case of acquittal, the officer would be sued civilly for lying and manufacturing evidence.

Defense counsel made no objection to the prosecutor's remarks, but this court is not precluded thereby from considering whether defendant was deprived of a fair trial. *Martin* v. *State* (1932), 12 Ohio Law Abs. 173. We conclude these remarks were plain error. *State* v. *Craft* (1977), 52 Ohio App. 2d 1.

Were the objectionable statements "so essentially prejudicial that the court [was] required of his own motion to caution counsel or to take the statements from the jury?" *State* v. *Harris* (1940), 32 Ohio Law Abs. 221. We conclude that they were that prejudicial, and that the harm was not corrected. In his general instructions to the jury, the court stated that the closing arguments of counsel were not evidence, but he made no specific reference to the damaging remarks. This was insufficient.

Finally, the evidence in the instant case was not free of difficulty. There were substantial questions of credibility to be decided by the jury. Hill was not so clearly guilty beyond a reasonable doubt that the error can be said to have been harmless under Crim. R. 52(A). *Moore* v. *State* (1910), 18 C. C. (N. S.) 482.

We find this case analogous to those decisions of our sister states in which defendant's conviction for non-support or bastardy was reversed where the prosecution indicated that a not guilty finding would place the financial burden of raising the children on the jurors as taxpayers. *Taylor* v. *State* (1936), 123 Fla. 358, 166 So. 825; *State* v. *Campo* (1950), 233 N. C. 79, 62 S. E. 2d 500; *Commonwealth* v. *Shaffer* (1973), 224 Pa. Super. 564, 307 A. 2d 394.

The state argues in its brief that the prosecutor's remarks were justified as a retaliatory response to the "vicious attack" by defense counsel on the police officer's credi-

bility. We disagree. Defense counsel's closing argument raised the question of the police officer's veracity in a legitimate, professional manner. Discrepancies in his testimony were pointed out and reviewed, and defense counsel indicated her opinion that the police officer's statements were not worthy of belief. Surely such an argument could and should have been anticipated easily in light of defense counsel's queries to prospective jurors during *voir dire* about whether each would consider the possibility that a police officer would lie. We do not find that the prosecutorial misconduct here was warranted by any action of defense counsel.

In his first assignment of error, defendant claims that his rights to compulsory process, due process and a fair trial were denied when the trial court failed to require police officers to find eyewitnesses to his search and arrest who, he asserted, were material to his defense. Defendant does not claim that evidence in the possession of or known to the state was suppressed. In *Kettering* v. *Baker* (1975), 42 Ohio St. 2d 351, the Ohio Supreme Court addressed itself to this subject, saying at 354:

"Although we agree that it is not proper for a law enforcement agency to suppress evidence, we also conclude that it is not the agency's obligation to engage in affirmative action in gathering evidence which an accused might feel necessary to his defense. The accused must protect his own interests."

See, also, *State* v. *Urrego* (1974), 41 Ohio App. 2d 124.

The case of *Brady* v. *Maryland* (1963), 373 U. S. 83, cited by defendant, is distinguishable since there is nothing in the record to indicate that the names and addresses of any witnesses were suppressed. This assignment of error is not well taken.

The second and third assignments of error are well taken. We reverse and remand for a new trial.

*Judgment reversed and cause remanded.*

BETTMAN, P. J., CASTLE and BLACK, JJ., concur.