THE STATE OF OHIO *v.* METZ.

(No. 87 CRB 7864—Decided July 14, 1987.)

Hamilton County Municipal Court.

*Ernest F. McAdams, Jr.,* assistant city prosecutor, for plaintiff.
*John H. Ranz,* for defendant.

PAINTER, J. This matter came to be heard on May 19, 1987 on the defendant's motion to suppress his arrest, and the search preceding it.

I
Facts

Cincinnati police officers Evans and Tighe were conducting a routine drug investigation at a bar known for illegal drug activity. Officer Evans watched Jason Stuart, whom he had previously arrested for drug trafficking, enter the men's room. The officers followed him and saw Christopher Metz, the defendant, enter the stall occupied by Stuart. Knowing Stuart's previous connections to drug sales and believing it unusual for two men to share the same bathroom stall, the officers thought they should investigate this situation. The officers stopped and searched both individuals upon their emergence from the stall.

Both officers testified that they feared for their safety due to Stuart's history and the "suspicious location" in which they found the two men.

When Officer Evans patted down the defendant, he felt a hard, round object. In order to ascertain the nature of this object, he reached into the defendant's pocket and pulled out a film container with two valium pills therein. Defendant was charged with drug abuse, a violation of R.C. 2925.11.

II
Discussion

The prosecution contends that the warrantless search can be justified

under *Terry* v. *Ohio* (1968), 392 U.S. 1, 44 O.O. 2d 383. Defendant alleges the search and seizure violated his rights under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, both of which guarantee the right of persons to be free from unreasonable searches and seizures.

The provisions of the Ohio Constitution pertaining to searches and seizures are substantially the same as those of the federal Constitution, *Cochran* v. *State* (1922), 105 Ohio St. 541, 543, 138 N.E. 54. Of course, the Fourth Amendment now applies to the states as well as to the federal government, and requires exclusion of evidence obtained in violation thereof. *Mapp* v. *Ohio* (1961), 367 U.S. 643, 655, 16 O.O. 2d 384, 389.

As a general rule, only probable cause justifies an intrusion upon the sanctity of one's person. *Katz* v. *United States* (1967), 398 U.S. 347, 358. General exploratory searches and seizures of either persons, houses or effects can never be justified either with or without a warrant. *Bock* v. *Cincinnati* (1931), 43 Ohio App. 257, 261, 183 N.E. 119, 121. In *Bock* the defendant was convicted of possessing "race horse slips," and the court of appeals questioned the search method, stating that "while upon the face of the matter it seems absurd that the known guilty should escape by reason of the illegality incident to the obtaining of the evidence warranting their convictions, it is manifestly necessary that the rights of law-abiding citizens shall be safeguarded from unwarranted interference, and that such rights shall be upheld and protected, even though it is to the profit of the offender." *Bock, supra,* at 261, 183 N.E. at 120.

However, the Supreme Court has recognized that under some conditions, police must have the flexibility to re-spond to unusual circumstances and that they therefore have the authority to detain a person and subject him to a limited weapons frisk even in the absence of probable cause to arrest. *Terry* v. *Ohio* (1968), 392 U.S. 1, 27, 30, 44 O.O. 2d 396-398. Yet, this is subject to the "reasonable" standard of the Fourth Amendment. *Id.* at 20, 44 O.O. 2d at 392. To justify an intrusion, the police must be able to point to specific, articulable facts that when taken with rational inferences would reasonably warrant the intrusion. *Id.* at 21, 44 O.O. 2d at 393.

In a case decided at the same time, *Sibron* v. *New York* (1968), 392 U.S. 40, 44 O.O. 2d 402, the Supreme Court limited "stop and frisk" by holding that a police officer who could not point to any particular facts from which he could reasonably infer that an individual was armed and dangerous conducted an unreasonable search. Yet, when an officer reached directly into the pocket of a suspect about whom he had been warned and pulled out a gun, the Supreme Court held that the officer's action was justified. *Adams* v. *Williams* (1972), 407 U.S. 143, 148. The court qualified its decision in *Adams* by noting that the police officer knew the informant and had used his tips in the past, and the officer was alone in a high crime area. *Id.* at 146-147. In addition, "the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Id.* at 145.

To stop and search an individual, officers must have a suspicion based upon reasonable and articulable facts that the particular person is involved in criminal activity. *United States* v. *Place* (1983), 462 U.S. 696, 702.

The Court of Appeals for Franklin

County heard an appeal from a judgment finding the defendant guilty of trafficking and drug abuse and held that police must possess a "reasonable and articulable suspicion that the suspect is engaged in criminal activity" when making a seizure less intrusive than a formal arrest. *State* v. *Hassey* (1983), 9 Ohio App. 3d 231, 9 OBR 403, 459 N.E. 2d 573, paragraph two of the syllabus. This case applied the *Terry* standard and, in doing so, balanced the government's "substantial interest in stopping the flow of illegal narcotics" with the Fourth Amendment's requirements "that all seizures must be reasonable." *Hassey, supra,* at 235, 9 OBR at 408, 459 N.E. 2d at 579.

The Court of Appeals for Hamilton County in *State* v. *Horan* (Nov. 13, 1985), No. C-850059, unreported, described the *Terry* test as "a dual inquiry for evaluating the reasonableness of an investigative stop: [1] whether the officer's action was justified at its inception, and [2] whether it is reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 3. In the *Horan* case, a police officer in the course of an undercover operation in a neighborhood notorious for narcotics trafficking observed an individual, whom he knew to have a criminal record for drug trafficking, approach the driver's side of an automobile. The officer followed the automobile and stopped it, finding contraband therein. The court concluded that the stop of the automobile (the later full search of the vehicle was consensual) was based upon an articulable and reasonable suspicion that the occupant was engaged in illegal activity.

## III
## Holding

At the outset, the court commends counsel for defendant for raising the Fourth Amendment issue. Too often, counsel do not adequately raise the issue of their client's rights under the Fourth Amendment. As stated in *Terry,* "[t]he scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Id.* at 21, 44 O.O. 2d at 393. Obviously, the issue must be raised by defense counsel, especially when as here a case involves not a bright line of previous court decisions, but the sometimes gray and uncharted frontier of the real world. The fact that this court believes, on balance, that the instant search should be adjudged reasonable does not mean that the issue should not have been raised; search issues should continue to be raised, so that a neutral and detached judge can evaluate the reasonableness of individual searches. Only in this manner can the Fourth Amendment continue its vitality.

Defendant entered a restroom in a bar known for illegal activity. His companion was an individual who already had been arrested for selling drugs. The two men acted in a manner which could certainly be called questionable in that they both entered the same bathroom stall.

Applying the *Terry* test to the facts at hand this court concludes that defendant was stopped upon an articulable and reasonable suspicion that he was engaged in illegal activity. In this situation, the right to have a restroom free of drug sales combined with society's need to limit or eliminate the use of illegal drugs is balanced against an individual's right to privacy.

Officer Evans' observation of a

known seller of narcotics entering a stall in a restroom with another individual led him to an articulable and reasonable suspicion that the defendant was engaged in illegal activity. Although "[p]resumptions of guilt are not lightly to be indulged from mere meetings," *United States* v. *Di Re* (1948), 332 U.S. 581, 593, a rendezvous in a bathroom stall built for one implies more than a mere meeting.

The officers' actions were based on objective facts — the record of drug sales in that particular bar combined with a situation which had all the earmarks of a drug transaction — not on the subjective good faith of the officers. Therefore, the decision to stop and search the defendant was reasonably related in scope to the circumstances which justified the interference in the first place. Furthermore, the pat down led Officer Evans to believe a round object which was in the defendant's pocket and the size of a pill container was such an item and perhaps contained an illegal substance. Under *Adams* v. *Williams, supra,* at 148, the reach into the pocket is justified, in that the officer had a reasonable suspicion concerning the actions of the defendant before he patted him down which was then combined with feeling a hard object in defendant's pocket.

In a recent case, *Smith* v. *United States* (1987), 525 A. 2d 200, the majority of the District of Columbia Court of Appeals held that being found in the company of the wrong people is enough, when coupled with other suspicious facts, to justify a stop under *Terry. Smith* also involved an individual not known to be a seller or purchaser of drugs who was engaged in a conversation with two men who had been identified as sellers of narcotics in an area known for its "high incidence of drug trafficking." *Id.* at 201. Police officers stopped the defendant because they had only minutes earlier received a radio report which said the two individuals were about to engage in a sale of narcotics. Although Officer Evans did not get the same type of report, the actions of defendant were sufficiently suspicious for the officer to believe that criminal activity was afoot.

The reasonableness standard of the Fourth Amendment by its very nature requires a balancing test. The rights of citizens to be free from being hassled by overzealous law officers is balanced by society's interest in enforcement of the criminal laws for the protection of all citizens. Random searches or seizures based on wild suspicion or hunch cannot be tolerated. When the information possessed by law enforcement officers rises to the level of a suspicion based on reasonable and articulate facts that the suspect is engaged in criminal activity, then a limited search or seizure may be justified. Certainly, in this balancing test, the courts must be mindful of the likelihood that innocent citizens will fall within the net if the net of reasonableness be cast too widely. In this case, however, the likelihood of innocent persons entering restroom stalls together with known drug dealers is slight indeed. Therefore, based on these facts, and limited by them, the court believes that the actions of the officers were reasonable.

The stop and seizure of defendant Metz, therefore, does not fail Fourth Amendment scrutiny since the case fits into the exceptions defined under *Terry* and its progeny. Given their knowledge about the nature of the bar and restroom, the information about Stuart and the actions of the two men in entering the same stall, Officers Evans and Tighe might have been "shrugging their shoulders and allowing a crime to occur" had they not

stopped and searched an individual who would have aroused suspicion in any reasonable person under the totality of these circumstances.

For all the foregoing reasons, the actions of the officers were not unreasonable, and defendant's motion is overruled.

*Motion overruled.*