The State of Ohio, Appellee, *v.* Kratzer, Appellant.

[Cite as State v. Kratzer (1972), 33 Ohio App. 2d 167.]

(No. 72AP-161—Decided December 19, 1972.)

*Mr. James J. Hughes, Jr.,* city attorney, *Mr. Daniel W. Johnson,* city prosecutor, and *Mr. Charles L. Price,* for appellee.

*Mr. R. Raymond Twohig, Jr.,* for appellant.

Reilly, J. This is an appeal from a final judgment of the Franklin County Municipal Court.

The record before us is the transcript of proceedings upon a motion to suppress evidence and a partial transscript of less than one page concerning a stipulation by the parties, which is as follows:

"It is hereby stipulated that State Exhibit No. 1 (plastic bag with contents) was introduced as evidence at the trial of this case, May 8, 1972, and was made a part of the record."

The record shows that the defendant, appellant herein, was a passenger in an automobile driven by Craig Frazier which was stopped by two police officers near the intersection of Fifteenth Avenue and North Fourth Street. The

officers requested and obtained the drivers' licenses of both Kratzer and Frazier. They returned to their patrol car with Frazier's license. Thereupon, both officers continued to search the car for the automobile registration. It was found within a few minutes, and one of the officers took the registration from Frazier. The officer returned to the cruiser. Shortly thereafter, defendant went to the cruiser and requested that he go and be allowed to inform his friends in the nearby apartment building that they would be late for their dinner engagement. Permission was refused, and one of the officers told him to return and remain in the car.

Several minutes later the officers returned to the car and asked the two men to get out and go to the cruiser. The officers took positions on the opposite sides of the patrol vehicle (facing each other) and stated they would conduct a weapons search. Each was searched by one of the officers. The officer who searched appellant reached directly into his lower right-hand pocket without first frisking or patting him down and took a soft bag which was underneath a black leather glove. There were no hard objects in his pocket. Defendant was charged with possession of marijuana.

A motion to suppress was filed in the Franklin County Municipal Court. A decision was rendered, after an evidentiary hearing, including, in pertinent part, the following:

"Upon further consideration the court finds that the initial intrusion being lawful the contraband was lawfully discovered and seized. The motion to suppress is overruled."

Subsequently, the case was tried before the court and defendant was found guilty of the offense charged and sentenced to thirty days in the workhouse (suspended) and fined one hundred dollars.

Appellant advances his assignment of error as follows:

"The Municipal Court in its judgment and proceedings in this cause:

"1. Erred in allowing illegally obtained evidence (a

bag of alleged marijuana) to be admitted into evidence against the Appellant at trial in contravention of the Fourth and Fourteenth Amendments to the United States Constitution.''

We particularly stress that we are bound by the record before this court. The only two witnesses who testified at the hearing upon the motion to suppress were the defendant and Craig Frazier. The police officers were not called to testify. Their testimony might have placed the facts in a different perspective. We cannot theorize, however, concerning what the officers' testimony might have been. We are required to accept the evidence in the record.

Counsel for defendant asserts in his brief that ''when David Kratzer was precluded from leaving the scene of the halted vehicle he was legally under arrest.'' *Alter* v. *Paul* (1955), 101 Ohio App. 139, 142, Court of Appeals for Franklin County, is cited in support of the contention. It is noteworthy that *Alter, supra,* includes a quotation at page 141 from 5 Ohio Jurisprudence 2d 18, Arrest, Section 2, as follows:

''An arrest is the taking, seizing or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. The seizing and placing in quarantine of a person pursuant to the health laws is an arrest. *However, the mere accosting and making inquiries of a person by an officer does not constitute an arrest. Nor does the submission of a person constitute an arrest,* if he is not at the time actually within the power of the officer. There is no arrest where the person sought to be arrested is not conscious of any restraint of his liberty, nor is there any arrest where a person is forcibly seized without pretense of taking him into legal custody.'' (Emphasis added.)

The case of *State* v. *Milam* (1959), 108 Ohio App. 254, quoting with approval *State, ex rel. Sadler,* v. *District Court,* 70 Mont. 378, 225 P. 1000, at page 268, includes the following elements of arrest:

" 'To constitute an "arrest," four requisites are involved: A purpose to take the person into custody of the law, under real or pretended authority and an actual or constructive seizure or detention of his person, so understood by the person arrested.' "

Further, the first paragraph of the syllabus in *State* v. *Terry* (1966), 5 Ohio App. 2d 122, affirmed 392 U. S. 1, is as follows:

"A policeman may, under appropriate circumstances, reasonably inquire of a person concerning such person's suspicious on-the-street behavior. The stopping and questioning of a suspicious person does not violate the Fourth Amendment to the United States Constitution and does not constitute an arrest in the technical criminal-law sense. *A required element of an arrest is the intent of the officer to make an arrest.*" (Emphasis added.)

The record in this case does not show an intent or purpose by the officer to arrest defendant when he asked him to remain with him. The arrest occurred *after* the search. Consequently, this was not a search incident to an arrest.

The real issue is whether the search met the requirements of the law controlling this court in a "stop and frisk" situation. This concept allows police officers to stop and search a person without having probable cause for arrest. *Terry* v. *Ohio* (1968), 392 U. S. 1. Such a search is limited to the protection of police officers and people within a general area. It is limited to a reasonable intrusion solely to discover weapons.

The Supreme Court, in *Terry, supra,* at pages 29 and 30 explicitly limited the scope of such search:

"* * * Suffice it to note that such a search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. See *Preston* v. *United States,* 376 U. S. 364, 367 (1964). The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to

discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

"The scope of the search in this case presents no serious problem in light of these standards. Officer McFadden patted down the outer clothing of petitioner and his two companions. *He did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons,* and then he merely reached for and removed the guns. *He never did invade Katz' person beyond the outer surfaces of his clothes, since he discovered nothing in his pat-down which might have been a weapon.* Officer McFadden confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find.

"* * * We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct *a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. * * *"* (Emphasis added.)

The search in this case, as revealed by the record, was not made on the outer clothing by the pat down procedures required by *Terry, supra.* The officer did not initially pat defendant down. Instead, he reached directly in his pocket. He went underneath the soft black leather glove and removed a soft bag which did not resemble a weapon. Moreover, the record does not disclose unusual conduct suggesting criminal activity. There is no evidence to indicate either man may have been armed. And, there is no evidence

whatever in the record indicating fear by the officers for the safety of themselves or others.

The case of *Sibron* v. *New York* (1968), 392 U. S. 40, decided the same day as *Terry, supra,* included facts showing that the officer knew Sibron was associating with known narcotics addicts. Moreover, Sibron reached into his pocket, which could have caused a person to believe he was reaching for a weapon. Nonetheless, the Supreme Court held that the officer conducted an unreasonable search, violating Sibron's Fourth Amendment rights. The court wrote as follows, at pages 62 and 63:

"* * * The officer was not acquainted with Sibron and had no information concerning him. He merely saw Sibron talking to a number of known narcotics addicts over a period of eight hours. It must be emphasized that Patrolman Martin was completely ignorant regarding the content of these conversations, and that he saw nothing pass between Sibron and the addicts. So far as he knew, they might indeed 'have been talking about the World Series.' The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin. *It is axiomatic that an incident search may not precede an arrest and serve as part of its justification.* * * *" (Emphasis added.)

Further, the Supreme Court wrote at pages 65 and 66 of the *Sibron* case:

"* * * The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics, and he found them. The search was not rea-

sonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. *Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions* on the part of all government agents." (Emphasis added.)

The *Terry* case, *supra,* was applied by the United States Court of Appeals in *Riccardi* v. *Perini* (C. C. A. 6, 1969), 417 F. 2d 645. Judge Cecil wrote, at page 647:

"According to *Terry* a 'stop and frisk' type of search must be justified from its inception. We do not think the officers had sufficient information to reasonably justify stopping the appellee and we are unwilling to extend the doctrine of *Terry* to cover the circumstances of such a case.

"Barring a 'stop and frisk' search on mere suspicion the officers, in order to support a lawful search, would have to have had, at the time they stopped the appellee, probable cause to believe that he had committed or was committing an offense. * * *"

The record in this case simply does not support such probable cause. We reiterate, the record is limited to the testimony of defendant and his companion, Craig Frazier. The officers were not called. Moreover, there was not a motion made to continue the hearing so they could testify. This leaves a record without evidence to support the search in this case. Therefore, we are constrained to find defendant's assignment of error well taken.

The judgment and the decision of the trial court are reversed and the case is remanded for further proceedings in accordance with this decision.

*Judgment reversed.*

STRAUSBAUGH and WHITESIDE, JJ., concur.