**The STATE of Ohio, Appellee,**

**v.**

**EDWARDS, Appellant.**

[Cite as *State v. Edwards* (1992), 80 Ohio App.3d 319.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60518.

Decided May 26, 1992.

*Stephanie Tubbs Jones*, Prosecuting Attorney, for appellee.

*Robert A. Dixon*, for appellant.

---

NAHRA, Judge.

On March 10, 1990, Detective Kenneth Patterson of the Narcotics Unit of the Cleveland Police Department was on patrol with his partner, Sergeant Gercer, in the area of East 120th Street and Benham Avenue in Cleveland, Ohio. They were trying to locate some suspects that other officers were chasing through the backyards of residential homes. Patterson and Gercer were riding in unmarked cars and were wearing civilian clothing.

As Det. Patterson pulled his vehicle onto East 120th Street, he observed two males standing on a driveway located at 3545 East 120th Street. Upon the vehicle's approach, Taft Edwards, defendant-appellant, and Moses Durden split up and began to walk in opposite directions. Edwards began to walk toward the house more quickly once the officers identified themselves as Cleveland police officers. Detective Patterson testified at the suppression hearing that he observed Edwards discard something. Patterson admitted that the item could have been a gum wrapper but that, whatever it was, it was never recovered. Moses Durden testified that he did not observe Edwards discard anything. Edwards also was observed reaching into the breast pocket of his jacket.

The two police officers immediately drew their weapons and ordered Edwards to remove his hand from his jacket. Edwards then raised his hands into the air and Det. Patterson proceeded to conduct a patdown for a weapon. No weapon was found.

Det. Patterson then conducted another search of Edwards to look for contraband. As a result of the second search, Patterson found a small packet which contained marijuana and cocaine. Edwards was arrested thereafter.

Edwards was indicted on one count of drug law violation pursuant to R.C. 2925.11 and possession of criminal tools pursuant to R.C. 2923.24. Edwards filed a motion to suppress the evidence. After the trial court denied the motion, Edwards entered a plea of no contest. He was found guilty and sentenced to a term of one and a half years on each count to run concurrently. The sentence was suspended and Edwards was placed on probation for two years. This appeal follows.

Edwards' sole assignment of error states:

"The trial court erred in overruling the defendant-appellant's motion to suppress evidence, as the stop and search was wholly improper under the totality of the circumstances."

Edwards maintains that Det. Patterson's investigative stop and subsequent search surpassed permissible boundaries and were improper.

The United States Supreme Court established in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, that a police officer may make a warrantless investigatory stop without probable cause of an individual where the police officer reasonably suspects that the individual has been involved in criminal activity. The Supreme Court stated:

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. *Carroll v. United States*, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543] (1925); *Beck v. Ohio*, 379 U.S. 89, 96–97 [85 S.Ct. 223, 228, 13 L.Ed.2d 142, 148] (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more than inarticulate hunches, a result this court has consistently refused to sanction. *See, e.g. Beck v. Ohio supra; Rios v. United States*, 364 U.S. 253 [80 S.Ct. 1431, 4 L.Ed.2d 1688] (1960); *Henry v. United States*, 361 U.S. 98 [80 S.Ct. 168, 4 L.Ed.2d 134] (1959)." (Footnotes omitted.) *Terry v. Ohio*, 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

■ The record reveals that officer Patterson did possess specific and articulable facts upon which an investigatory stop of Edwards was justified. Such facts include the following: the area in question was known as a high drug area; Det. Patterson and his partner were searching for two male suspects in the area; Edwards separated from another male when the unmarked police car arrived and began walking away more briskly when the police officers identified themselves; Edwards apparently discarded something while he was walking down the driveway and reached into the pocket of his jacket. These factors considered together establish that the officers did

have reasonable suspicion based upon articulable facts to justify an investigatory stop and frisk for weapons.

Even though appellant's behavior warranted Patterson to stop Edwards, Patterson's search of Edwards' person surpassed justifiable limits. The justification for a frisk after a stop rests upon the need to protect police officers who are engaged in investigative activity. *Terry v. Ohio, supra,* 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. A police officer may frisk the suspect if the officer has reasonable grounds to believe that the suspect is carrying a weapon or otherwise endangers the officer's safety. *Sibron v. New York* (1968), 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936; *State v. Moody* (1985), 30 Ohio App.3d 44, 30 OBR 99, 506 N.E.2d 256; *State v. Kratzer* (1972), 33 Ohio App.2d 167, 62 O.O.2d 257, 293 N.E.2d 104. Here, Patterson testified that he had observed Edwards reach into his jacket pocket. As a result, Patterson conducted a limited frisk for weapons. Patterson revealed that he found no weapons during the limited frisk; he then proceeded to search Edwards and discovered contraband. Inasmuch as Patterson's second pat down was not prompted out of any concern for his protection, we believe that such search surpassed justifiable limits of a search following an investigative stop. See *State v. Hinerman* (Apr. 10, 1986), Cuyahoga App. No. 50353, unreported, 1986 WL 4397; *State v. Kratzer, supra.* As a result, Patterson's search violated Edwards' constitutional right against unreasonable searches and seizures.

We also do not believe that Patterson had probable cause to search Edwards.

Probable cause exists when an arresting officer has sufficient information to warrant a prudent man in believing that a felony has been or is being committed and that it has been or is being committed by the accused. *Henry v. United States* (1959), 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; *Brinegar v. United States* (1949), 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; *State v. Hill* (1977), 52 Ohio App.2d 393, 6 O.O.3d 436, 370 N.E.2d 775.

Det. Patterson's observations of Edwards did not warrant a prudent man in believing a felony was in progress. Patterson testified that he observed Edwards standing at the end of a driveway standing next to another person. Patterson did not observe anything exchanged. Upon arrival of the unmarked car, Edwards began walking toward the house there. Edwards did not make any furtive glances. Edwards did begin to walk more rapidly; according to Patterson, Edwards did discard an object. However, Edwards' behavior did not give rise to a reasonable inference that he was a participant in a felony. *Sibron v. New York, supra.* Therefore, based on the totality of

the circumstances, we find that Patterson did not have probable cause to believe Edwards was committing or had committed a drug offense.

As a result of the foregoing, we find that the trial court erred in denying appellant's motion to suppress. Appellant's assignment of error is sustained.

Accordingly, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HARPER, J., concurs.

MATIA, C.J., dissents.

HARPER, Judge, concurring.

I concur with the majority that this case be reversed. However, I write further on the issue of investigatory stop. The majority found sufficient articulable facts to justify an investigatory stop of Edwards. I disagree. The majority states:

"The record reveals that officer Patterson did possess specific and articulable facts upon which an investigatory stop of Edwards was justified. Such facts include the following: the area in question was known as a high drug area; Det. Patterson and his partner were searching for two male suspects in the area; Edwards separated from another male when the unmarked police car arrived and began walking away more briskly when the police officers identified themselves; Edwards apparently discarded something while he was walking down the driveway and reached into the pocket of his jacket. These facts considered together establish that the officers did have reasonable suspicion based upon articulable facts to justify an investigatory stop and frisk for weapons."

This finding is in direct conflict with the trial court's observation and further broadens what constitutes articulable facts. The trial court made the following observation:

"There is no dispute as to the fact that Detective Patterson first observed the defendant standing in the driveway engaged in an apparently innocent conversation with Moses Darden. At that time, given the totality of the circumstances, I believe that the detective had no justification for even a Terry stop and frisk, since there were no facts observable to him to indicate any suspicious activity.

"The detective testified that the defendant walked away, reached into his jacket pocket and pulled out something, which he then threw to the ground.

However, by his own admission, the detective stated there was no reference to this incident in his report, even though that report is now relied upon as the primary ground to support the arrest, search and seizure of the defendant."

We must not support a dangerous precedent that any police suspicion warrants an investigatory stop, seeing that almost any movement could be termed suspicious depending on who made the movement and where he or she is found. Both the United States Supreme Court and the Ohio Supreme Court have held that the officer must have more than a vague suspicion. "He must have a reasonable suspicion that criminal activity is imminent and must be able to state specific facts to justify the conclusion that the defendant is engaged in criminal activity." *State v. Fincher* (1991), 76 Ohio App.3d 721, 603 N.E.2d 329. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. See, also, my dissent in *State v. Smith* (Aug. 29, 1991), Cuyahoga App. No. 58918, unreported, 1991 WL 185720.

This court held in *State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832, that: "A person's mere presence in an area of high crime activity (so called) does not suspend the protection of the Fourth and Fourteenth Amendments to the United States Constitution."

In the case *sub judice*, the officers saw two black males standing in the driveway of the house belonging to one of the parties, holding an innocent conversation. The officers were in the neighborhood to assist other officers chasing certain individuals. There was no description given to the officers of those being chased. I cannot see how observing two citizens standing in their driveway gives the police an articulable reason to believe that they are criminals or that they are the individuals being chased by fellow officers. They were not seen running or making any overtures that justifies such thinking. A *Terry* interpretation must not be left to police imagination. This court should not be dragged into a false premise that if one black male is suspected of crime, all black males in the area are also suspects, thereby justifying an investigatory stop of every black male. Given the officer's presumption that anyone who is seen in an area of a drug sweep in the so-called high crime area is a suspect that must be questioned, it is not unreasonable to walk away when approached by a police vehicle. Our laws are not intended to be interpreted as requiring citizens who live in the so-called "high crime areas" to be confined to their homes or otherwise be stopped and seized by law enforcement officers either for standing still or for walking away when approached.

This court held in *State v. Hewston* (Aug. 2, 1990), Cuyahoga App. No. 59095, unreported, 1990 WL 109183, that "a stop is not justified when based

on nothing more than the fact that the defendant had run upon being approached by a police officer in an area of drug activity." We also held in *State v. Bryant* (May 30, 1991), Cuyahoga App. No. 58621, unreported, 1991 WL 95067, that a citizen is not bound to respond to an officer's inquiry, and that the failure to so respond is not tantamount to a criminal act. See, also, *Singletary v. State* (Miss.1975), 318 So.2d 873. There is no reason for us in the case *sub judice* to justify an investigatory stop because a defendant merely walked away "briskly" from a police car when we could not justify it in prior cases for running away from a police car. In reversing the trial court's denial of a motion to suppress in *Fincher, supra,* this court concluded thus:

"We hold that approaching an occupied car on foot and then, upon seeing the police, retreating from the scene is not sufficient activity to justify an investigative stop, even in an area of drug activity. The motion to suppress was improperly denied."

I alluded in my dissent in *Smith, supra,* that we are not all privileged to live in affluent neighborhoods and those of us who are not so privileged are still full citizens of this great democracy and have the same constitutional protections as the privileged. The less privileged must be left alone and not be treated like common criminals because of their economic status or their skin colors. Where no facts exist to believe that the less privileged have committed or are about to commit a crime, the Constitution protects them from unreasonable searches and seizures by overzealous law enforcement officers, no matter where they may live. Accordingly, the investigatory stop of appellant is inappropriate and offensive, and his motion to suppress should have been granted.

DAVID T. MATIA, Chief Judge, dissenting.

I respectfully dissent from the decision as rendered by the majority.

The Supreme Court of Ohio, in *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271, held that there exists no "bright lines or easy answers" when dealing with a motion to suppress as based upon an investigatory stop and a protective search of a defendant. The Supreme Court of Ohio, however, has firmly established that a totality of the surrounding circumstances test, as based upon the surrounding circumstances viewed through the eyes of a reasonable and prudent police officer, must be applied to each motion to suppress upon appellate review.

"Since *Terry*, courts have struggled with the elusive concept of what comprises a reasonable suspicion that someone is engaging in, or about to engage in, criminal activity. Terms like "articulable reasons" and "founded

suspicion" are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise.' *[United States v.] Cortez, supra,* [449 U.S. 411] at 417 [101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628]. Fleshing these terms out, courts have concluded that an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture—a totality of the surrounding circumstances. *Id.* at 417–418 [101 S.Ct. at 695, 66 L.Ed.2d at 629]; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *United States v. Rickus* (C.A.3, 1984), 737 F.2d 360, 365. Furthermore, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859; *State v. Freeman* (1980), 64 Ohio St.2d 291, 295, 18 O.O.3d 472, 474, 414 N.E.2d 1044, 1047. A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement. *Cortez, supra.*

"The state urges that Martin's investigative stop of Andrews was reasonable under the standards set in the foregoing cases. Specifically they point to five factors: (1) the investigative stop took place in a high crime area, (2) it occurred at night and in a dark area, (3) Martin had twelve and a half years' experience on the police force, (4) Martin was away from this police cruiser and alone at the time of the stop, and (5) Martin saw the defendant running away from the direction of a police cruiser and into the dark courtyard.

"We believe that the facts support a reasonable suspicion by Martin that Andrews was engaged in criminal activity. Martin was an experienced police officer with twelve and a half years on the force and was familiar with the Roland Circle area. We must view the circumstances of the stop through his eyes. He was the ' "reasonable and cautious police officer on the scene" ' who is guided by his own experience and training. *Freeman, supra,* at 295, 18 O.O.3d at 474, 414 N.E.2d at 1047; *United States v. Hall, supra,* at 859." (Footnote omitted.) *State v. Andrews, supra,* 57 Ohio St.3d at 87-88, 565 N.E.2d at 1273.

In the case *sub judice,* the record clearly demonstrates that: (1) the Cleveland Police Department had received complaints of illegal drug usage and drug sales in the area of East 120th Street, Cleveland, Ohio; (2) the arresting police officer had over thirteen years of experience as a police officer; (3) the arresting police officer had made hundreds of drug-related arrests; (4) the area surrounding East 120th Street, Cleveland, Ohio, was under surveillance by two unmarked police automobiles; (5) two other police officers were involved in a chase of two drug-related suspects; (6) the arresting police officer and his partner were searching for the two male

suspects when they turned onto East 120th Street; (7) two males were observed standing in a driveway located off East 120th Street; (8) the two males, upon seeing the unmarked police automobile, separated with the appellant slowly walking away; (9) the police officers identified themselves at which time the appellant walked away at a faster pace; (10) the appellant, while walking away from the two police officers, threw something to the ground and reached into his inside jacket pocket; (11) the police officers drew their weapons and instructed the appellant to place his hands in open view; (12) the appellant was searched for possible weapons; and (13) the investigating police officers feared that the appellant was reaching for a concealed weapon and that the appellant had discarded contraband.

Applying the totality of the surrounding circumstances test of *Andrews* to the facts before this court requires an affirmance of the judgment which denied the appellant's motion to suppress. These facts, when viewed through the eyes of a reasonable and prudent police officer, warranted an investigatory stop and search of the appellant. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.

It should be noted, however, that absent the continued refusal of the appellant to stop, absent the quickening of the appellant's retreat from the police and absent the furtive movements of the appellant vis-a-vis placing a hand into the inside pocket of his jacket, the police would *not* have possessed a reasonable suspicion of criminal activity to support an investigatory stop. It was the conduct of the appellant, subsequent to the initial appearance of the police, which provided a reasonable and cautious police officer with a reasonable suspicion of criminal activity. It must also be noted that the credibility of all witnesses, who testified during the suppression hearing, was primarily a matter for consideration by the trial court and nothing in the record before this court can be found to refute the credibility of the police officer who testified on behalf of the state of Ohio at the suppression hearing. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

Therefore, the trial court did not err in denying the appellant's motion to suppress and the judgment of the trial court should be affirmed.