[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
The State of Ohio is appealing pursuant to Crim.R. 12(J) from the decision of the Montgomery County Common Pleas Court sustaining defendant Lynch's motion to suppress evidence seized from him and all statements attributed to him following an investigative stop made of him by the Dayton police. The facts of the matter and the rationale for the court's decision are thoroughly and ably articulated in the opinion and decision rendered by Judge Mary E. Donovan, which we set forth in full as follows:
 This matter is before the Court on Defendant's Motion to Suppress. An oral hearing was held on December 5, 1997. The sole witness was City of Dayton Police Officer Otis Gross.
 FINDINGS OF FACT
 On September 16, 1997, at around 2:00 in the afternoon, Officer Gross and his partner were patrolling in the area around Edgewood and Meredith Streets, an area known for drug and prostitution activity. While driving westbound on Edgewood, the officers spotted Defendant Daryl Lynch. As they approached him, he turned and apparently waved in the direction of some house across the street and yelled something. As they reached Defendant's location, the officers looked toward the area where Defendant had been waving and saw nobody.
 The officers had a hunch that Defendant was attempting to lead them to falsely believe that he knew someone in the neighborhood. The officers observed no illegal conduct prior to stopping Defendant. However, they believed there was a possibility Defendant could have been up to "no good." Tr. pg. 6. The officers "stop people at times just to see what they're doing in the area and to make sure they're not breaking the law". Tr. pg. 15. Defendant was not being questioned with respect to anything suspicious that occurred in the area, and was not suspected of having committed any crime.
 The officers stopped Defendant, and patted him down. Defendant was cooperative. While searching Defendant's outer clothing, Officer Gross felt what he believed to be some plastic material down inside the left side of Defendant's waist. Upon discovering Defendant was wearing a second pair of pants inside his sweatpants, Officer reached inside the outer pair, continuing the pat-down, and pulled out the plastic baggie he had previously felt. The baggie was found to contain crack cocaine.
 Defendant indicated he believed there were some warrants out for his arrest. Subsequently, Officer Gross ran Defendant's social security number over the KDT system, and it verified the existence of a Trotwood warrant and a Dayton capias.
 CONCLUSIONS OF LAW
 "As a general rule, only probable cause justifies an intrusion upon the sanctity of one's person." State v. Metz, 37 Ohio Misc.2d 3; Katz v. United States
(1967), 389 U.S. 347. "General exploratory searches and seizures of either persons, houses or effects can never be justified either with or without a warrant." Id.; Bock v. Cincinnati (1931), 43 Ohio App. 257.
 "[I]t is a cardinal principle that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject to only a few specifically established and well-delineated exceptions'." State v. White, 110 App.3d 347 (Ohio App. 4 Dist. 1996); Mincey v. Arizona (1978), 437 U.S. 385; other cites omitted. "The state bears the burden of proving that one of the few established exceptions applies in order for evidence seized as a result of a warrantless search to survive a motion to suppress." State v. Bean, 63 Ohio Misc.2d 434 (Ohio Com.Pl. 1992); State v. Kessler (1978), 53 Ohio St.2d 204.
 "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." State v. Edwards, 80 Ohio App.3d 319
(Ohio App. 8 Dist. 1992); Terry v. Ohio
(1968), 392 U.S. 1. In making an assessment of the reasonableness of a particular search and seizure in light of the particular circumstances, "it is imperative that the facts be judged against an objective standard; would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Edwards, supra; Terry, supra. "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more than inarticulate hunches, a result [the United States Supreme Court] . . . has consistently refused to sanction." Edwards, supra; Beck v. Ohio (1964), 379 U.S. 89; Rios v. United States (1960), 364 U.S. 253; Henry v. United States (1959), 361 U.S. 98; Terry, supra. Other footnotes omitted.
 "A hunch is not an accepted basis for an intrusion of protected rights." State v. Rucker, 63 Ohio App.3d 762
(Ohio App. 8 Dist. 1990). An officer's belief that someone is "up to something" or that their actions are "not normal" does not necessarily justify a reasonable suspicion that criminal activity is afoot. City of Logan v. Bunthoff (April 14, 1994), Hocking App. No. 93 CA 11, unreported 1994 WL 146830. Moreover, "[d]etaining and stopping an individual merely because he `looked suspicious' was held to be an illegal seizure in violation of the Fourth Amendment." State v. Dickinson (March 12, 1993), Lake App. No. 92-L-086, unreported, 1993 WL 111022; Brown v. Texas (1979), 443 U.S. 47. "Thus, looking suspicious is not enough to justify an investigative stop." Dickinson, supra; Brown, supra.
 In Dickinson, for instance, deputies pulled alongside a vehicle and observed an individual "moving around in his vehicle, yelling and waiving his arms." The court held that "[t]here is no law which prohibits appellant from talking to himself, waving his arms and yelling while driving his automobile. We note that appellant was not charged with disorderly conduct or some similar offense relating to a breach of the peace. Thus, we conclude that the stop was based on nothing more than an inarticulate hung [sic] and, therefore, was improper." Id.
 The Dickinson court further held that "facts established after the initial stop are not relevant to determining whether the stop was legal. [I]f the initial stop was illegal, then all of the evidence must be suppressed and we need not reach the issue of whether the arrest was supported by probable cause." Id.
 Furthermore, "the fact that an investigative stop is proper does not necessarily mean a frisk is also proper. The police officer must have a reasonable suspicion that the individual whom he has stopped is armed." State v. Mickey (June 29, 1990), Montgomery App. No. CA-11582, unreported. "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." Smith v. Ohio (1990), 494 U.S. 541, citing Sibron v. New York (1968), 392 U.S. 40. "Given that an officer may have a reasonable and articulable suspicion to stop a suspect and conduct a Terry search for possible weapons, that officer cannot expand the protective frisk into a general search to discover evidence or contraband." State v. Oborne, 99 Ohio App.3d 577
(Ohio App. 2 Dist. 1994); State v. Brown (1992), 83 Ohio App.3d 673.
 "The sole justification of the search * * * is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, supra. Moreover, it has been held that a Terry pat-down "cannot under any circumstances be used as a subterfuge to search a suspect for evidence." White, supra.
 "Unless probable cause and exigent circumstances exist, once the officer determines that the object detected in the outer clothing of the subject is not a weapon, the search must stop. Oborne, supra; Minnesota v. Dickerson (1993), 508 U.S. 366. With respect to the question of whether or not the object is the size or density of a weapon and whether or not the particular search was proper, "some courts take into account other evidence bearing upon whether or not the particular search was proper, "some courts take into account other evidence bearing upon whether it appears the officer was acting in good faith such as whether the object felt more like an item of evidence, the officer suspected the person might have on him that weapon." White, supra. Additionally, it has been held: "As far as we are aware, an investigative `stop and frisk' of a person exclusively for drugs has never been constitutionally permissible absent `probable cause' to suspect criminal activity." State v. Moon (1991), 74 Ohio App.3d 162.
 Accordingly, the Court finds that the stop of Defendant was constitutionally improper. Moreover, in the Court's judgment, the evidence falls short of establishing that the frisk was conducted because of the officers' fear that they were dealing with an armed and dangerous individual. Therefore, it, too, was impermissible.
 The stop was conducted in broad daylight. Defendant was not suspected of having committed any crime, and was not being questioned in regard to anything suspicious that had occurred in the area. There was no evidence that Defendant appeared to be carrying or concealing any weapons as officers approached him. Moreover, he was not engaging in any illegal activity that they observed. Defendant did not attempt to flee or evade officers, and did not resist before, during, or after his arrest. In fact, he was cooperative to the extent of supplying the information relating to his outstanding warrants.
 Officer Gross' comment that the [sic] "believed that he was up to basically no good in that area, be it for drug or prostitution reasons," pointed to a generalized hunch, rather than a specific, articulable suspicion of criminal activity. Moreover, Officer Gross indicated that they sometimes stop people to see what they're doing in the area and to make sure they're not breaking the law. Clearly this conduct by law enforcement violates the Fourth Amendment to the U.S. Constitution.
 The Court further finds that the drugs were seized in an effort to uncover contraband rather a weapon, that the search exceeded the reasonable boundaries of a search of the outer clothing, that it was not immediately apparent to the officer that the substance inside the plastic bag was cocaine, and that the drugs were not the size or density that would be expected of a weapon and warranted no further investigation.
 The State, citing State v. Meyers (May 31, 1995), Montgomery App. No. 14856 and City of Dayton v. Click
(October 5, 1994), Montgomery App. No. 14328, unreported, argues that because of Defendant's outstanding capias', his Motion to Suppress should be overruled. These cases are distinguishable from the case under consideration, and the Court is not persuaded that the Court of Appeals intended this consequence under the circumstances in the present case. In Meyers, contraband was found incident to arrest for an outstanding capias. In Click, further illegal activity occurred after the stop and before the arrest on the outstanding capias.
 If the Court were to adopt the reasoning advanced by the State, then any individual with even a minor misdemeanor traffic capias has forfeited any and all Fourth Amendment safe guards. The Court finds this result wholly inconsistent with rights that are zealously protected and guaranteed.
 The Court believes an analysis of the case sub judice, with respect to the inevitable discovery doctrine is instructive. "Under this exception, evidence obtained in violation of a constitutional right may be properly admitted at trial if it can be shown that such evidence would have been ultimately or inevitably discovered during a lawful investigation if no constitutional violation had taken place." State v. Wilson, 97 Ohio App.3d 333 (Ohio App. 12 Dist. 1994); Nix v. Williams (1984), 467 U.S. 431. In the instant case, the drugs were small and easily movable. There is insufficient evidence that they would have been ultimately and inevitably discovered in the absence of police misconduct, as Defendant could have relocated them or otherwise disposed of them. The Court finds that the State should not be placed in a better position that it would have been absent the illegality.
 The focus in this case should be on deterrence of unconstitutional activity. The officers had admittedly been making unconstitutional stops in the area at issue. To admit this evidence offers incentive for them to step up efforts to subject innocent citizens to unconstitutional searches with the prospect of potentially justifying their illegal actions based upon the existence of a capias which may be totally unrelated to the evidence uncovered.
 Because both the stop and the search were illegal and warrantless, all evidence derived therefrom was tainted and should be suppressed. Wong Sun v. United States (1963), 371 U.S. 471. The result in this case is constitutionally mandated. Both the exclusionary rule and the Fourth Amendment to the U.S. Constitution exist to protect society — all those citizens who never break laws more serious than mthose prohibiting overtime parking. Narrowly viewed, the exclusionary rule (in some minds) is very unattractive, because in the vast majority of cases in which it is applied the immediate result is to free an obviously guilty person. But the guilty defendant is freed to protect all of us from unlawful police invasions of our security and to maintain the intregrity of our institutions. White, supra.
 Therefore, in view of the foregoing findings of fact and conclusions of law, the Court hereby SUSTAINS Defendant's Motion to Suppress. (Docket 12.)
The State brings two assignments of error, namely that the suppression order was erroneous because Lynch was constitutionally seized since there was an outstanding warrant for his arrest, and, in the alternative, the evidence would have been admitted anyway because of the inevitable discovery rule.
The State is relying on four decisions of this court which hold, in effect, that a person who is a subject of an outstanding warrant for arrest is "fair game" for an identity stop, no matter how unwarranted otherwise, and a following arrest under the outstanding warrant. State v. Meyers (May 31, 1995), Montgomery App. No. 14856, unreported; City of Dayton v. Click (Oct. 5, 1994), Montgomery App. No. 14328, unreported; State v. Ware (Jan. 16, 1998), Montgomery App. No. 16425, unreported; State v. Ingram
(Jan. 30, 1998), Montgomery App. No. 16783, unreported. Counsel for appellee in her brief before this court urges this court to re-examine the holdings in those cases and reverse ourselves but, she adds, given this court's recent adherence to the doctrine in those cases "appellee holds out little hope of a different result." (Appellee brief, 4).
We hereby pleasantly surprise counsel for appellee.
We find the trial court's statement that this court did not intend, under the doctrine in the cited cases, to admit evidence seized under the circumstances in the present case (Docket 12, 6-7) to be accurate and fair. The line of authority established by the foregoing cases is limited to valid arrests following identification of the person for whom the warrant is outstanding. None of the cases cited concern evidence seized from that person prior to the valid arrest. A person for whom a warrant for arrest has been issued is subject to a wide open stop and arrest under that outstanding warrant, but the existence of such an outstanding warrant does not retroactively validate subsequent unconstitutional intrusions and indignities following an unconstitutional stop. Evidence so unconstitutionally seized prior to the valid arrest under an outstanding warrant is subject to suppression. In that regard, we accept and adopt the trial court's opinion as our own.
As to the argument made by the State that the evidence should be admitted because of the inevitable discovery rule, we give deference to the decision of the trial court in the exercise of her discretion that the evidence would not have been "inevitably" discovered. As the appellee points out, the inevitable discovery rule is an extension of the "independent source" exception announced by the United States Supreme Court in 1920. SilverthornLumber Co. v. United States (1920), 251 U.S. 385, 40 S.Ct. 182. In order to apply the rule there must be both a finding that the evidence would have been discovered by lawful means but for the police misconduct and that the government was actively pursuing a substantial alternative line of investigation. U.S. v. Lamas
(C.A. 5, 1991), 930 F.2d 1099. Thus, essentially it is a "two-track" analysis, which is not present in the case before us. In any event, where the trial court, which has observed the witnesses in a hearing and judges the "inevitableness" of a presumed discovery of evidence, exercises its discretion and finds that discovery would not have been necessarily inevitable, we defer to the decision of the trial court.
Both assignments of error are overruled, and the judgment is affirmed. Of course, the appellee is subject to arrest for the outstanding warrants on him, and the case is, therefore, remanded for further proceedings not inconsistent with this opinion.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Cheryl A. Ross
Lynn G. Koeller
Charles Grove
Hon. Mary E. Donovan