DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Scott Cummings appeals his conviction in the Medina County Common Pleas Court for Having Weapons While Under Disability, a violation of R.C. 2923.13. Prior to trial, Defendant moved to suppress evidence based upon an alleged illegal warrantless search. The motion was denied, the case proceeded to trial, and he was convicted. Defendant now appeals the denial of his motion to suppress, his conviction, and his sentence. This Court affirms.
 I.
In the early morning hours of May 29, 1997, officers of the Brunswick Police Department responded to a call regarding a disorderly person outside the residence at 1558 Polk Drive. While in transit, the police dispatcher informed the officers that the perpetrator was possibly armed and that shots may have been fired. Sgt. Michael Kurnot and Ptl. Clark Winch were the first officers to arrive. For tactical reasons, they parked their police cruiser approximately one hundred yards from 1558 Polk Drive and approached the residence on foot. As they neared, they saw Defendant in front of the duplex yelling, throwing yard furniture at the home, and hitting a car with his fists. The officers advanced toward the suspect, identified themselves as police officers, and ordered Defendant to cease and desist his actions. Sgt. Kurnot testified that Defendant appeared agitated, and did not heed their instructions. As a result, the officers had no alternative but to forcibly take Defendant to the ground and handcuff him. After restraining Defendant, the officers noticed a strong odor of alcohol emanating from him, and saw blood spots on his hand, shirt, and pants. Defendant continued to yell, curse at the officers and act defiantly. Ptl. Pringle and Ptl. Rightnour then arrived and assisted Sgt. Kurnot and Ptl. Winch.
Sgt. Kurnot entered 1558 Polk Drive and spoke with Defendant's sister, Mrs. Lightcap. Sgt. Kurnot observed that the front picture window in the kitchen of the residence was broken, and glass on the range beneath the window was broken "as if an object had hit it." While Sgt. Kurnot was inspecting the kitchen area he discovered a .38 caliber derringer. The weapon was located in a pile of glass approximately ten to twelve feet in front of the broken window on the kitchen floor. Mrs. Lightcap informed Sgt. Kurnot that the weapon did not belong to her or her husband. Sgt. Kurnot secured the weapon and observed that one of its chambers was empty but the remaining one contained a .38 caliber bullet. Mrs. Lightcap testified that Defendant threw an object through her kitchen window, and Sgt. Kurnot indicated that an object thrown from Defendant's position outside the home would have landed on the range, which was consistent with where the weapon was discovered. Ptl. Winch then entered the home and took written statements from the residents. After speaking with Mrs. Lightcap, Ptl. Winch ascertained that she and her family lived on one side of the duplex and Defendant lived on the remaining side with Mrs. Lightcap's and his parents. The witnesses could not confirm whether or not the weapon had been discharged prior to the officers arriving. Based upon the witnesses' statements, Defendant's behavior and appearance, and the radio dispatch regarding possible shots fired, Ptl. Winch entered 1560 Polk Drive to insure no one had been injured. Ptl. Winch did not observe any injured persons in the residence but did notice a plastic bag laying on Defendant's bed containing two .38 caliber bullets.
Ptl. Pringle then entered the residence at 1558 Polk Drive and spoke with Mrs. Lightcap. She informed Ptl. Pringle that Defendant had driven a station wagon parked in the drive of 1560 Polk Drive that evening. Ptl. Pringle then checked to see if the vehicle had recently been operated by placing his hand on the car's hood. He noticed the grille area was warm, "as if just driven." The front driver's window was partially down, and the passenger door was unlocked. Ptl. Pringle testified that he looked into the vehicle and noticed a leather holster on the passenger floor. He confiscated the holster and a .38 caliber bullet discovered on the driver's seat of the vehicle. Ptl. Pringle testified that the weapon discovered at 1558 Polk Drive was a "perfect fit" with the holster found in the vehicle.
After Defendant was taken to the police station, Ptl. Pringle and Ptl. Rightnour discovered two .38 caliber bullets in Defendant's pants pockets. Defendant was charged with Having Weapons While Under Disability. Prior to trial, Defendant moved the trial court to suppress the bullets discovered in 1560 Polk Drive based upon an alleged unconstitutional search. The trial court denied the motion and the matter proceeded to trial. The jury returned a guilty verdict, and a sentencing hearing was held on December 12, 1997. The trial court received a presentence report, considered the criteria for sentencing and community control sanctions, and sentenced Defendant to nine months incarceration. Defendant timely appeals the trial court's denial of his motion to suppress, his conviction and his sentence. This Court will address each issue in turn.
 II. First Assignment of Error The unlawful search of Defendant's home constitutes aviolation of Defendant's rights under the Fourteenth Amendment tothe United States Constitution and Article I, Section 14 of the OhioConstitution and the trial court erred as a matter of law inallowing into evidence the fruits obtained as the result of theunlawful search.
In his first assignment of error, Defendant avers that the trial court erred by denying his motion to suppress evidence and permitting the State to admit the bullets discovered in his home into evidence. This assignment of error is without merit.
The decision to grant or deny a motion to suppress involves a question of law. As such, this Court will review the trial court's judgment granting or denying such motion de novo. Statev. Russell (Apr. 29, 1998), Summit App. Nos. 18206, 18207, unreported at 3; see, also, Ornelas v. United States (1996),517 U.S. 690, ___, 134 L.Ed.2d 911, 920. As stated in Russell,
"[a]n appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference[.]"Russell, supra. In State v. Cumberledge (Sept. 16, 1998), Lorain App. No. 97CA006959, unreported, this Court further noted that
 [w]hen considering a motion to suppress, the trial court assumes the role of trier of fact and thus, stands in the best position to resolve issues of fact and witness credibility. Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting such facts as true, this court must independently determine, as a matter of law, whether the facts meet the requisite legal standard.
Id. at 5, quoting Cuyahoga Falls v. Stephenson (June 18, 1997), Summit App. No. 18011, unreported at 4-5.
The protections guaranteed by the Fourth Amendment to the United States Constitution afford citizens a fundamental principle of constitutional law:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
The Fourth Amendment to the United States Constitution. Section14, Article I of the Ohio Constitution, through almost identical language, provides these same assurances to its people. Although fundamental principles of constitutional law, the tenets of theFourth Amendment are not impenetrable. Certain "exceptions" to the warrant requirement have been carved out of the parameters of theFourth Amendment. Entry into a person's home without a warrant based upon emergency, or "exigent", circumstances is one such exception. In Russell, this Court set forth a careful analysis of when entry into a home by a peace officer may be justified based upon exigent circumstances.
 The question of whether an entry into a home by peace officers, acting without a warrant, is "reasonable" requires a careful analysis of the sequential and consequential events leading up to and including the entry. An entry can never be found "reasonable" based solely upon the fact that criminal conduct, or contraband, was discovered within the residence. See State v. Williams (1978), 55 Ohio St.2d 82, 86. The question is whether the government agents acted reasonably at each step of the process that led from the first contact (inquiry or notice) to ultimate entry and seizure. See, e.g., State v. Ramey (1971), 30 Ohio Misc. 89, 94-95.
 Not only are the sequence of steps taken by the officers determinable, but the roles the officers are playing at each step bears upon reasonableness. Police officers are not simply criminal law enforcers, charged with investigating criminal conduct and developing and maintaining evidence of crime. They wear other hats, one of which is their community health, safety, and protection role. Police officers are charged with the duty to prevent crime, preserve the peace, and protect persons and property. State v. Hyde
(1971), 26 Ohio App.2d 32, 33; R.C. 737.11.
 An additional component of the reasonableness analysis is the question of whether the test is subjective or objective, i.e., did the officer think he or she was acting reasonably or, would a reasonably prudent officer believe he or she was acting reasonably? Courts have uniformly held that the test is an objective, not subjective one. State v. Andrews (1991), 57 Ohio St.3d 86, 87; State v. Edwards (1992), 80 Ohio App.3d 319, 322.
The issue then becomes:
 Considering the role that the government officer was executing, would a reasonably prudent officer, in the same or similar circumstances, have taken each step that was, in fact, taken by these officers from initial contact through entry and seizure within the home of the defendants?
 The chronological, sequential analysis of the evidence in this case is measured against three basic principles of constitutional law:
 Warrantless search and entry upon property by police are per se unreasonable. Katz v. United States (1967), 389 U.S. 347, 357, 19 L.Ed.2d 576, 585.
 Entry and search, however, can be justified where there exists "an emergency situation, demanding urgent police action." U[nited] S[tates] v. Radka (C.A. 6, 1990), 904 F.2d 357, 361.
 The warrantless entry must be "`strictly circumscribed by the exigencies which justify its initiation.'" State v. Applegate (1994), 68 Ohio St.3d 348, 350, quoting Terry v. Ohio (1968), 392 U.S. 1, 26, 20 L.Ed.2d 889, 908.
Russell, supra at 3-5.
In the instant case, the police officers involved were responding to a call involving a disorderly person and possible gun shots. Upon arriving, they observed Defendant in an agitated state, yelling outside a residence, and hitting a vehicle parked in the drive with his fists. As they approached Defendant and identified themselves as police officers, Defendant continued to act belligerently and refused to comply with the officers' orders. After being subdued, the officers noticed Defendant had blood on his hand, shirt, and pants, and appeared intoxicated. The front window of the residence Defendant was directly in front of had been broken, or possibly shot. After discovering the weapon inside 1558 Polk Drive, and learning that it did not belong to the residents, Ptl. Winch entered 1560 Polk Drive. Ptl. Winch indicated that he entered the home to insure that no one was injured inside the residence.
Defendant argues that the officers failed to obtain a warrant due to lack of effort, and urges this Court to find that the officers disregarded the Fourth Amendment as if it were "a soiled welcome mat[.]" Although a colorful analogy, Defendant fails to recognize the important roles police officers must play in order to protect every citizen's rights. When Ptl. Winch entered Defendant's home, he was acting as a community caretaker with the purpose of locating possible injured persons, not for the purpose of collecting incriminating evidence. Based upon the discovery of the weapon, the weapon having only one unspent bullet, the nature of the radio dispatch involving possible gun shots, the blood on Defendant's person, and Defendant's behavior, this Court cannot conclude that Ptl. Winch acted unreasonably by entering Defendant's home.
Upon entering the home, Ptl. Winch conducted a cursory search of the rooms for possible injured persons. His search was limited to areas in which an injured person could possibly be located. When he entered Defendant's bedroom, he observed a plastic bag in plain view on Defendant's bed containing two bullets. Ptl. Winch did not exceed the permissible scope of the search, justified by the circumstances, in entering Defendant's bedroom. As such, the evidence observed in plain view within the room was properly seized. The entry and search of Defendant's home was reasonable in light of the surrounding circumstances and was consistent with the safeguards of the Fourth Amendment. Therefore, the trial court did not err by denying Defendant's motion to suppress, and permitting the State to admit the bullets obtained from Defendant's bedroom into evidence. His first assignment of error is overruled.
 Second Assignment of Error The evidence presented to trial court [sic]was insufficient to support [Defendant's] conviction andis therefore contrary to law.
Defendant next alleges that his conviction was not supported by sufficient evidence. This Court disagrees.
To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In the instant case, Defendant was charged with Having Weapons While Under Disability. Defendant does not argue that he is not under disability, or that the weapon discovered at 1558 Polk Drive was not an operable firearm. Defendant's sole contention is that the evidence did not support a finding that he possessed the firearm. R.C. 2923.13(A)(2) defines the crime of having a weapon while under disability as: "knowingly acquir[ing], hav[ing], carry[ing], or us[ing] any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence[.]" In order to "have" a firearm within the meaning of R.C. 2923.13, a person must actually or constructively possess it. State v. Hardy (1978),60 Ohio App.2d 325, 327. "`Actual possession requires ownership and, or, physical control.'" State v. Messer (1995), 107 Ohio App.3d 51,56, quoting Hardy, supra, at 327.
The State presented evidence at trial that Defendant actually possessed the gun. The officers testified that the front window had been broken out either by an object being thrown through it, or it being shot. Sgt. Kurnot testified that the location he discovered the weapon, and the damage to the range were consistent with the weapon being thrown from Defendant's position outside the residence. In addition, the officers confiscated a leather holster that the weapon fit into, and a .38 caliber bullet in the vehicle Defendant had been driving that evening. The State also introduced two .38 caliber bullets taken from Defendant's pants pockets after he was arrested. Although no eyewitness testimony was introduced identifying that Defendant possessed the gun, sufficient circumstantial evidence exists to support his conviction. "Circumstantial evidence and direct evidence inherently possess the same probative value[.]" Jenks, supra, at paragraph one of the syllabus. Thus, "proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence." State v. Griffin (1979), 13 Ohio App.3d 376, 377. Defendant's second assignment of error is overruled.
 Third Assignment of Error The trial court's imposition of mandatory prison timefor a conviction under 2923.13 [sic] iscontrary to the sentencing guidelines set forth inSenate Bill 2.
Finally, Defendant contends that the trial court erred by sentencing him to a term of incarceration. This assignment of error is without merit.
In State v. Grundy (Dec. 9, 1998), Summit App. No. 19016, unreported, this Court set forth the proper procedure the trial court must implement when imposing a sentence under R.C. Chapter 2929.
 R.C. 2929.11(A) sets forth the underlying purposes of felony sentencing: "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." In order to achieve the dual purposes of felony sentencing, the trial court must consider the need to incapacitate, deter, and rehabilitate the offender, and the need for the offender to make restitution to the victim, the public, or both. Id. A felony sentence must be reasonably calculated to achieve these objectives, and it must be "commensurate with and not demeaning to the seriousness of the offender's conduct[,] * * * and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). Pursuant to R.C. 2929.14(A)[(5)], if a court is required or elects to impose a prison term for a [fifth] degree felony, the court must impose a definite term of from six to [twelve] months. According to R.C. 2929.13(B)(1), in sentencing an offender for a [fifth] degree felony, the court must initially determine whether any of the factors enumerated in (a) through (h) of this section apply.
 If the sentencing court determines that one of the factors applies, it must next determine whether a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11. In making this finding, the court is guided by R.C. 2929.12. R.C. 2929.12(B) and (C) steer the court's determination as to whether the offender's conduct was more or less serious than conduct that normally constitutes the offense. However, the court is not limited to the factors listed in the statute but may also consider all other relevant factors in evaluating the seriousness of the offense. R.C. 2929.12(B).
 The court next must determine whether the offender is likely to commit future crimes by considering all relevant factors, including those set forth in R.C. 2929.12(D) and (E). This analytical step bears relation to the court's finding under R.C. 2929.13(B)(2)(a) and (b) as to whether the offender would be amenable to community control.
 After considering all the requisite factors, if the court finds that a prison term is consistent with the purposes of felony sentencing set forth in R.C. 2929.11 and finds that the offender is not amenable to an available community control sanction, "the court shall impose a prison term upon the offender." R.C. 2929.13(B)(2)(a).
(Emphasis omitted.) Id. at 7-8.
In the instant case, the record reflects that the trial court adhered to the proper statutory principles in sentencing Defendant to a term of incarceration. The trial court considered the relevant sentencing factors, including a presentence investigation report, and found that a term of incarceration was consistent with the purposes of felony sentencing and that Defendant was not amenable to a community control sanction. Based upon this finding, the trial court was obligated pursuant to R.C.2929.13(B)(2)(a) to impose a term of imprisonment. As such, the trial court did not err by finding that Defendant was subject to a mandatory term of incarceration in the instant case. His third assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the Medina Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ DONNA J. CARR, FOR THE COURT
REECE, P. J.
DICKINSON, J., CONCUR